## THE ETHEL V. STOWMAN.

District Court, D. New Jersey.
Oct. 5, 1936.

James H. Molloy, of Philadelphia, Pa., for petitioners Fogg & Stowman.

Willard M. Harris, of Philadelphia, Pa., for Commercial Tp.

FORMAN, District Judge.

The schooner Ethel V. Stowman was sold by this court. The township of Commercial attempted to enforce a lien against the vessel for taxes, which lien was held to be invalid. There was left in the registry of the court, after the satisfaction of lienors, the sum of $537.30. This sum is claimed by Frank T. Stowman as the surviving and liquidating partner of Fogg & Stowman, owners of the res.

The township of Commercial filed an intervening petition claiming the surplus to satisfy its allegedly accrued taxes. In an additional brief on behalf of the township of Commercial it objects that the petitioner Frank T. Stowman has no legal standing to contest the township's tax claim because the records of the customs house show that the vessel was owned, one-half by Lockwood W. Fogg, one-quarter by H. Bennett Stowman, and one-quarter by Frank T. Stowman. This issue was not raised except in the way of comment in the brief aforesaid, and I am inclined to believe that, in the absence of any formal traverse of his petition, his rights to the fund, unless more substantially attacked, should not be avoided by the court.

The petitioner Stowman insists that the claim of the township of Commercial is res adjudicata, in that it was held to be without legal foundation by this court because the taxes were not legally assessed. He further alleges that under such circumstances the township was not a lienor or attaching creditor or mortgagor at the time of the seizure, and therefore has no right

in the distribution of the remnants and surplus.

The township of Commercial, on the other hand, asserts that its rights to such remnants and surplus are based upon the General Tax Act of the state of New Jersey entitled "An Act for the assessment and collection of taxes (Revision of 1918) L. 1918, c. 236, p. 847," of which article 2, § 202 (Comp.St.Supp.N.J.1924, § 208—66d (202), provides: "All property, real and personal, within the jurisdiction of this State, not expressly exempted by this act or excluded from its operation, shall be subject to taxation annually under this act at its true value, and shall be valued by the assessors of the respective taxing districts. Property omitted by the assessors may be assessed as hereinafter provided. All property shall be assessed to the owners thereof with reference to the amount owned on the first day of October in each year, and the persons so assessed for personal property shall be personally liable for the taxes thereon."

It contends that for four years, from 1930 to 1933, inclusive, Fogg & Stowman, and particularly Frank Stowman, were apprized of the taxation by having furnished to them yearly bills for said taxes. It further suggests that, in the event that there is any question concerning the validity of the assessment, the same is conclusively fixed as a valid assessment under the provisions of article 5, § 513, of the New Jersey Laws, P.L.1918, p. 870 (Comp. St.Supp.N.J.1924, § 208—66d (513) as follows:

"No tax or assessment imposed or levied in this State shall be set aside or reversed in any court of law or equity in any action, suit or proceeding for any irregularity or defect in form, or illegality in assessing, laying or levying any such tax or assessment, or in the proceeding for collecting the same if the person against whom or the property upon which such tax or assessment is assessed or laid is, in fact, liable to taxation or assessment in respect to the purposes for which such tax or assessment is levied, assessed or laid; and the court in which any action, suit or proceeding is or shall be pending to review any such tax or assessment is required to amend all irregularities or errors, or defects, and is empowered, if need be, to ascertain and determine for what sum such person or property was legally liable to taxation or assessment, and by order or decree to fix the amount thereof; and the sum so fixed shall be the amount of tax or assessment for which such person or property shall be liable, and the same shall be and remain a first lien or charge upon the property and persons, and collectible in the manner provided by law, the same as if such tax or assessment had been legally levied, assessed or imposed in the first instance by the city, town, township, commissioner, board or other authority attempting to make, impose or levy the same; it shall be the duty of the court to make a proper levy, imposition or assessment in all cases in which there may lawfully be an assessment, imposition or levy; and such court is hereby given full and ample authority to make a lawful levy, assessment or imposition."

It argues that this court should now construe the above section as the New Jersey Court of Chancery would construe it, setting aside all invalidities and/or imperfections in the assessment and fixing the tax as a lien against this fund.

I am not persuaded that the township of Commercial had a good and subsisting lien against this vessel by reason of any legal assessment of taxes, nor am I convinced that the New Jersey laws providing for the rectification of mistakes in taxation are any more binding on this court at this stage of this admiralty proceeding than heretofore.

It is my opinion that there was no specific lien against this vessel in favor of the township of Commercial at the time of its seizure.

I cannot agree with the intervening petitioner, the township of Commercial, that the jurisdiction of this court is as broad as it contends. While it has been said that an admiralty court "is not governed by artificial or technical rules or mode of procedure and acts with the spirit of the purest equity and good conscience, it cannot change the legal relations of parties to property as can a court of chancery."

The claim of the township of Commercial was inherently defective as a state lien. It cannot be cured in admiralty proceedings. Hence there is no standing for it in the distribution of the surplus remaining in the registry of this court.

"Beyond doubt maritime liens upon the property sold by the order of the admiralty court follow the proceeds, but the proceeds arising from such a sale, if the title of the owner is unincumbered and not subject to

any maritime lien of any kind, belong to the owner, as the admiralty courts are not courts of bankruptcy or of insolvency, nor are they invested with any jurisdiction to distribute such property of the owner, any more than any other property belonging to him, among his creditors. Such proceeds, if unaffected by any lien, when all legal claims upon the fund are discharged, become by operation of law the absolute property of the owner." The Lottawanna, 20 Wall. 201, at page 221, 22 L.Ed. 259.

Under the circumstances, the intervening petition of the township of Commercial will be dismissed, and that of petitioner Stowman for the remnants and surplus will be sustained.