**In re CONTINENTAL MORTGAGE IN-VESTORS, a Massachusetts Trust with Transferable Shares, Debtor-Appellant.**

**Appeal of SECURITIES AND EXCHANGE COMMISSION.**

Nos. 77–1216, 77–1217.

United States Court of Appeals, First Circuit.

Argued Sept. 12, 1977.

Decided May 25, 1978.

Alan L. Lefkowitz, Boston, Mass., with whom Edward T. Robinson and Gaston Snow & Ely Bartlett, Boston, Mass., were on brief, for Continental Mortgage Investors, debtor-appellant.

Irving H. Picard, Asst. Gen. Counsel, Washington, D. C., with whom David Ferber, Sol. to the Commission, Washington, D. C., Marvin E. Jacob, Associate Administrator, Lawrence J. Toscano, Sp. Counsel, and Philip M. Mandel, Sp. Counsel, New York City, were on brief, for Securities and Exchange Commission, appellant.

Charles W. Morse, Jr., Boston, Mass., with whom Victor Bass and Sullivan & Worcester, Boston, Mass., were on brief, for John Hancock Mutual Life Ins. Co., et al., appellees.

Robert M. Gargill, Boston, Mass., with whom Choate, Hall & Stewart, Boston, Mass., Henry L. Goodman and Zalkin, Rodin & Goodman, New York City, were on brief, for Creditors' Committee and Certain Senior Creditors, appellees.

Before CAMPBELL and TUTTLE *, Circuit Judges, WOLLENBERG **, District Judge.

WOLLENBERG, District Judge.

These two appeals involve one of the largest business reorganizations in United States history, initiated on March 8, 1976, by the petition of Continental Mortgage Investors ("CMI" or the "debtor") in the District Court for the District of Massachusetts to effect a plan of arrangement under Chapter XI of the Bankruptcy Act.[1] The proceedings were referred to a bankruptcy judge who entered the order on October 20, 1976, which is the subject of these appeals, adjudicating CMI a bankrupt. On October 21, 1976, CMI filed a Chapter X[2] petition, which was referred back to the same bankruptcy judge. Hearings to determine whether the petition was brought in good faith, that is, whether a corporate reorganization is feasible within the meaning of Chapter X, commenced on November 18, 1976, and are ongoing at the time of this appeal.

The primary concern of these appeals is with the propriety of an order of adjudication of a corporate debtor in Chapter XI proceedings pursuant to Section 376 of the

---

* Of the Fifth Circuit, sitting by designation.

** Of the Northern District of California, sitting by designation.

1. Chapter XI is that chapter of the Bankruptcy Act providing for the arrangement of the debts of corporations by voluntary agreement between the debtor and its trade and general creditors subject to court approval. For general discussions of the purposes of Chapter XI see cases cited in note 2 *infra*.

2. Chapter X is that chapter of the Bankruptcy Act which provides for corporate reorganization of debtors under the supervision of the court. It differs from Chapter XI primarily in that it is intended to more adequately protect the interests of public investors and to allow for more extensive corporate reorganizations or the readjustment of more complicated debt structures. Chapter XI, on the other hand, is the more appropriate vehicle for the simple composition of unsecured corporate debts. For discussions of and comparisons between these chapters, see *Securities and Exchange Commission v. American Trailer Rentals,* 379 U.S. 594, 519–20, 85 S.Ct. 513, 13 L.Ed.2d 510 (1965); *General Stores Corp. v. Shlensky,* 350 U.S. 462, 518–19, 76 S.Ct. 516, 100 L.Ed. 550 (1956); *Securities and Exchange Commission v. United States Realty & Improvement Co.,* 310 U.S. 434, 447–53, 60 S.Ct. 1044, 84 L.Ed. 1293 (1940).

Bankruptcy Act[3] and Rule 11–42(b)[4] because it effectively denied without a hearing pending motions to transfer the proceedings to Chapter X made pursuant to Section 328 of the Bankruptcy Act[5] and Rule 11–15.[6]

The order of adjudication by the bankruptcy judge in the case at bar was appealed to the district court by CMI, by the Securities and Exchange Commission ("SEC") and by the Indenture Trustee for CMI's publicly-held Convertible Subordinate Debentures ("Citibank"). The consolidated appeals eventuated in an affirmance by the district court judge on April 21, 1977, from which CMI and the SEC appeal. Appellees are a group of holders of approximately $36 million of the senior note obligations of CMI ("Institutional Investors") and the Chapter XI official creditors' committee ("Creditor Committee").

3. The Bankruptcy Act appears in Title 11 of the United States Code. For all sections in Chapters X and XI of the Bankruptcy Act, the U.S.C. citation can be calculated by adding 400 to the section number of the Act. Thus section 376 of the Bankruptcy Act is 11 U.S.C. § 776. The U.S.C. citation hereafter will be omitted in all cases where this rule applies.
Section 376 of the Bankruptcy Act provides: . . . if an arrangement is not proposed in the manner and within the time fixed by the court, or if an arrangement is withdrawn or abandoned prior to its acceptance, or is not accepted at the meeting of the creditors or within such further time as the court may fix . . . the court shall—
\* \* \* \* \* \*
(2) where the petition was filed under section 322 of this Act, enter an order, upon hearing after notice to the debtor, the creditors, and such other persons as the court may direct, either adjudging the debtor a bankrupt and directing that bankruptcy be proceeded with pursuant to the provisions of this Act or dismissing the proceeding under this chapter, whichever in the opinion of the court may be in the interest of the creditors: *Provided, however,* That an order adjudging the debtors a bankrupt may be entered without such hearing upon the debtor's consent.

4. Acting pursuant to 28 U.S.C. § 2075, the Supreme Court has formulated rules governing procedures in bankruptcy. There are specific Chapter X Rules governing the procedure in courts of bankruptcy in cases under Chapter X of the Bankruptcy Act, which incorporate many of the general Bankruptcy Rules governing the procedure of cases under Chapters I–VII of the Act. There are corresponding Chapter XI Rules as well. All references to "Rules" are to these rules of practice and procedure, which supersede conflicting provisions of the Bankruptcy Act.
Rule 11–42(b), a Chapter XI Rule, provides that:
(b) *Dismissal or Conversion to Bankruptcy for Want of Prosecution, Denial or Revocation of Confirmation, Default, or Termination of Plan.* The court shall enter an order, after hearing on such notice as it may direct dismissing the case, or adjudicating the debtor a bankrupt if he has not been previously so adjudged, or directing that the bankruptcy case proceed, whichever may be in the best interest of the estate—
(1) for want of prosecution . . . . .

5. Section 328 of the Bankruptcy Act provides the following:
The judge may, upon application of the Securities and Exchange Commission or any party in interest, and upon such notice to the debtor, to the Securities and Exchange Commission, and to such other persons as the judge may direct, if he finds that the proceedings should have been brought under chapter X of this Act, enter an order dismissing the proceedings under this chapter, unless, within such time as the judge shall fix, the petition be amended to comply with the requirements of chapter X for the filing of a debtor's petition or a creditors' petition under such chapter, be filed . . . such amended petition or creditors' petition shall thereafter, for all purposes of chapter X of this Act, be deemed to have been originally filed under such chapter.

6. Rule 11–15, derived from section 328 of the Act with several changes, prescribes the procedure for conversion to Chapter X. Applicable portions prescribe that:
(a) *Motion by Debtor.* A debtor eligible for relief under Chapter X of the Act may, at any time, make a motion to have the case proceed under such Chapter.
\* \* \* \* \* \*
(c) *Form of Motion; Answer.* . . . On the making of such motion, the court shall fix a date on at least 20 days' notice to the parties specified in subdivision (d) of this rule for the filing of answers controverting the allegations of the motion . . . . .
(d) *Hearing and Order.* After hearing, on notice to the debtor, the Securities and Exchange Commission, indenture trustees, creditors, and stockholders . . . the court shall, if it finds that the case may properly proceed under Chapter X of the Act, grant the motion and order that the case proceed under that Chapter. The granting of the motion shall be deemed to constitute approval of a petition under Chapter X.

## FACTS

CMI, the debtor in these bankruptcy proceedings, had been one of the largest Real Estate Investment Trusts in the United States. Its shares were actively traded on the New York Stock Exchange. Its investments were principally in construction and development loans secured by first mortgages on real property located throughout the United States and its territories. As a result of unfavorable economic conditions in 1972–1976, including a depression in the real estate market, an increase in interest rates, and the higher cost of building materials and construction labor, CMI experienced financial difficulties which culminated in its filing a voluntary Chapter XI petition in bankruptcy. At that time CMI reported assets of approximately $611 million and liabilities of about $593 million, of which about $46 million was junior debt consisting of publicly held debentures with the remaining debt owed to senior creditor banks and institutional investors. There was no secured debt in CMI. CMI's shares of beneficial interest were held by approximately 28,000 public shareholders. In its subsequently prepared Annual Report[7] for the fiscal year ending March 31, 1976, it was indicated that CMI's business had changed to that of managing its assets, consisting of loans and real estate, with a view toward completion and marketing of certain projects and operating other income-producing projects. The reported deficit net worth was over $90 million.

The Creditor Committee, duly elected and confirmed by the bankruptcy court on July 18, 1976, moved that the court order CMI to propose, file, and transmit to the Creditor Committee a Chapter XI plan of arrangement. CMI filed its proposed plan[8] on August 13, 1976, but failed to get the approval of the Creditor Committee, which refused to support the plan unless CMI delivered an advance consent to adjudication to be held in escrow and to be used in the event that the arrangement was not confirmed by the court.

It was at this juncture that the posture of the parties in regard to transfer to Chapter X proceedings shifted. Two motions to transfer CMI's case to Chapter X from Chapter XI had been filed early in the case. The first was made by a group of senior creditors on April 13, 1976, and was subsequently supported by the affidavits of additional senior creditors on June 21. The second was made by the SEC on May 6, 1976.[9] June 18 was set as the date for filing answers to the transfer motions and, at CMI's request, the hearing was postponed until September 30, 1976. Following the frustration of the plan of arrangement under Chapter XI, caused by CMI's failure to obtain the requisite acceptances of a majority of the creditors, Citibank filed its motion to transfer to Chapter X just three days before the hearing on the two pending motions. On the date of the hearing, CMI made its own transfer motion and offered to consent to such transfer. It was also on this occasion that the senior creditors withdrew their transfer motion.[10] The Creditor Committee filed an answer in opposition to the SEC motion. Although prepared to argue the merits of its motion, the SEC urged that CMI's motion for consolidation of the three motions for a later hearing be granted. The bankruptcy judge denied these requests and subsequently failed to set a date for filing of answers and for a hearing on

---

7. Form 10–K, Annual Report Pursuant to Section 13 of the Securities Exchange Act of 1934. Joint Appendix to appellants' briefs at 198.

8. The plan of arrangement provided for the transfer of most of CMI's assets to a new corporation and a distribution to creditors of debt and equity securities of that corporation in exchange for their claims. Shareholders of CMI would have retained shares of beneficial interest in the old trust stripped of most of its assets.

9. The SEC also sought a stay of all steps in the Chapter XI proceedings which might prejudice a Chapter X reorganization effort, which request was denied.

10. It is contended by the Creditor Committee that this was in response to the Annual Report, note 7 *supra,* filed on September 17, 1976, which purportedly convinced the senior creditors that CMI was insolvent on an ongoing basis.

the CMI and Citibank motions for transfer to Chapter X. He proceeded to hear the SEC motion in isolation from those of the other movants, reserving his decision as to whether to set a later hearing for those motions.

On October 6, 1976, CMI, the SEC, and Citibank filed a motion in the district court to withdraw from the bankruptcy judge the three pending transfer motions for hearing and determination by the district court. In its order of October 12, 1976, denying this motion, the court noted the following:

It is clear that the movants' primary basis for seeking withdrawal of the reference is their apparent conviction that they have not received and will not receive a fair hearing on their respective motions [to transfer the proceedings to Chapter X] from the Bankruptcy Judge. . . . He has yet to rule on these matters, and I have no grounds for concluding that he will deny these parties their hearing.

On this same day, in a hearing scheduled for another purpose, the bankruptcy judge was advised that negotiations between CMI and the Creditor Committee had broken down. The judge then requested all parties to argue two days later, on October 14, 1976, dismissal under Rule 11–42(b)(1) versus adjudication under Chapter XI, on the assumption that the necessary acceptances of the plan of arrangement were not forthcoming.

At the October 14 hearing, the bankruptcy judge persisted in hearing the issue of dismissal or adjudication, over the objections of CMI, the SEC, and Citibank that the pending motions to transfer the action to Chapter X first be decided. He denied the Citibank motion to transfer from the bench without having heard the argument and without stating the reasons for his decision. It appears from the record that, being convinced of CMI's insolvency and lack of ability or intent to procure the requisite

creditor acceptances of a plan of arrangement, the bankruptcy judge felt compelled by Rule 11–42(b) to adjudicate CMI a bankrupt "for want of prosecution." Asserting that since a Chapter X petition could be filed in the district court either before or after bankruptcy is adjudicated under Chapter XI, relief under Chapter X would not be foreclosed by an adjudication under Chapter XI. Therefore, the judge declined to grant the request of CMI and Citibank to hold in abeyance any decision with respect to adjudication until the motions for transfer to Chapter X had been heard.[11] Noting the bleak economic situation of CMI, as reflected in its financial statements, and the mandatory language of Rule 11–42, the order of October 20, 1976, gave the following reasons for choosing adjudication: 1) that the plan of arrangement "has not been accepted by a majority in number and amount of all classes of creditors . . ."; 2) that "the Debtor and Debtor-in-Possession filed a Consent to transfer this case to a Chapter X proceeding and a Motion for an Order directing that this case proceed under Chapter X of the Act, which consent and Motion, in the judgment of this Court, constitutes an abandonment of these proceedings under Chapter XI of the Bankruptcy Act, as amended, and that as a result thereof, the Debtor and Debtor-In-Possession has unquestionably acknowledged its non-intention to further prosecute this case as a Chapter XI proceeding"; and 3) that "the Court had determined that it would not be in the best interest of this estate to dismiss the case but that it would be in the best interest of the estate and its creditors to adjudicate the Debtor a bankrupt . . ."

The only action of note to date in the superseded Chapter XI proceeding was the appointment of a Trustee in Bankruptcy on October 22, 1976. By mutual agreement, the order of November 5, 1976, in the

---

11. One reason for the bankruptcy judge's refusal to hear the transfer motions appears to have been his mistaken belief that it was for the district court in the first instance to decide whether there was any possibility of reorgani-

zation under Chapter X. See joint appendix at 465, 467. This would apparently be consistent with the practice in the District of Massachusetts prior to the implementation of Chapter X rules made effective August 1, 1975.

second proceeding, appointing a Chapter X Receiver, provided that it should not be construed as derogating from the status of the Trustee in Bankruptcy.

The matters presented for review and which will be considered herein are: 1) the timeliness of CMI's notice of appeal; 2) the appealability of the interlocutory order of adjudication; 3) the possibility of mootness of these appeals; and 4) the procedural correctness of the order of adjudication.

## I

■ Appellees make a threshold challenge to the jurisdiction of the Court to hear CMI's appeal, on the ground that the notice of CMI's appeal was not timely filed. In view of the fact that prior timely appeals were filed by Citibank and by the SEC, we regard the timely filing of CMI's notice of appeal as a rule of practice rather than as a jurisdictional requirement. *See Grunin v. International House of Pancakes*, 513 F.2d 114, 126 n. 12 (8th Cir. 1975), *cert. denied*, 423 U.S. 864, 96 S.Ct. 124, 46 L.Ed.2d 93 (1975). *Cf. In the Matter of Combined Metals Reduction Co.*, 557 F.2d 179, 201 (9th Cir. 1977) (by implication, appeal would be timely under Federal Rule of Appellate Procedure 4(a) had another party filed a prior timely notice of appeal). Particularly because the late filing was within the limits of an extension granted by the bankruptcy judge under Rule 802(c) [12] and only two days beyond that literally allowed by that rule, it would be manifestly inequitable to dismiss CMI's appeal for tardiness.

## II

■ A second jurisdictional challenge is that the order of adjudication was an interlocutory order which is not appealable. This Court has jurisdiction over "either interlocutory or final orders" in proceedings in bankruptcy under section 24 of the Bankruptcy Act. [13] This seemingly broad grant of appeal by right has been judicially limited in the case of interlocutory orders to those that "have the character of a formal exercise of judicial power affecting the asserted right of a party." *In re Homer Arth Well No. 1*, 529 F.2d 1272, 1274 (6th Cir. 1976); *Cope v. Aetna*, 412 F.2d 635, 639 (1st Cir. 1969). We are of the opinion that the adjudication of bankruptcy in the instant case is appealable as an order which substantially decided a step in the course of the Chapter XI proceedings. *See Aune v. Reynders*, 344 F.2d 835 (10th Cir. 1965); *In re Stanley Karman Inc.*, 279 F.Supp. 828 (S.D.N.Y.1967). *Cf. In re Homer Arth Well No. 1*, 529 F.2d at 1273–1274 (an order appointing a trustee is appealable); *In the Matter of Rice Barton Corp.*, 312 F.Supp. 1316 (D.Mass.1970) (confirmation of a Chapter XI plan of arrangement is appealable).

## III

■ Appellees raise the claim that these appeals are moot in that the order of adjudication resulted in no prejudice to the parties. An appeal is considered moot if it cannot affect the matter in issue or cannot grant effectual relief. *See, e. g., In the Matter of Combined Metals Reduction Co.*, 557 F.2d at 187, 190. It is contended that the option of reorganization under Chapter X was not foreclosed by the order of adjudication, that a reversal would not affect the Chapter X proceedings, and that, therefore, this Court can render only an advisory opinion on the matter of the adjudication. We disagree. The adjudication of bankruptcy prior to the filing of the Chapter X petition, necessitating separate proceedings, resulted in this case in adverse consequences to the debtor that in our opinion are contrary to the intent and purposes of the Bankruptcy Act. These consequences consisted of the following: 1) the possibility of prejudgment or prejudice on the part of the bankruptcy judge who declared CMI bankrupt and who

---

**12.** Chapter XI Rule 11–62 makes Bankruptcy Rule 802 applicable to Chapter XI cases. Rule 802(c) provides in pertinent part:

   c) *Extension of Time for Appeal.* The referee may extend the time for filing the notice of appeal by any party for a period not to exceed 20 days from the expiration of the time otherwise prescribed by this rule. . . .

**13.** 11 U.S.C. § 47.

is now presiding over the Chapter X hearings; 2) the anomalous result of two concurrent bankruptcy administrations; and 3) delay in the determination of the appropriateness of Chapter X rehabilitation. Thus, actual prejudice resulted from the order of adjudication.

■ The danger of a prejudicial stance by the bankruptcy judge is alleviated by the possibility of cure by review of the decision on the good faith hearings when it is finally rendered. But the stigma of adjudication may have a deleterious effect on reorganization attempts under Chapter X in other respects. Moreover, we cannot ignore the fact that the appointment of both a bankruptcy trustee and a receiver for the reorganization proceedings is a hybridization of the Chapter X and Chapter XI statutory schemes which unnecessarily confuses and complicates the administration of CMI's estate. Cf. In re International Oil Co., 427 F.2d 186 (2d Cir. 1970) (per curiam) (appointment of multiple trustees reversed as an unnecessary expense). These latter harms can be alleviated only by reversal and by the proper fashioning of relief from the effects of the order of adjudication. It is therefore apparent that these appeals were not rendered moot simply by the filing of a Chapter X petition, since prejudice caused by the order would not thereby be completely cured.

## IV

■ We turn finally to the question of whether the procedure employed by the bankruptcy judge resulted in the entry of an erroneous order of adjudication.[14] We find that the order of adjudication as made, without regard to the pending motions to

proceed under Chapter X, was in violation of the terms and purposes of the Bankruptcy Act and Rules. The order of adjudication should not have been entered without first holding hearings on the transfer motions to determine the feasibility of a Chapter X plan of reorganization.

An initial consideration is that the fact that Congress devised a procedure for transfer from Chapter XI to Chapter X indicates a preference for that procedure over the former method, which necessitated a dismissal of the Chapter XI petition and a subsequent filing of a petition under Chapter X.[15] Also important is the evident intent that adjudication as a bankrupt be forestalled when rehabilitation proceedings are attempted under either Chapter X or Chapter XI. That this is particularly true of Chapter X proceedings is evidenced by two provisions of the Bankruptcy Act and Rules. One is that if good faith hearings held pursuant to an original Chapter X petition terminate in a finding that reorganization under Chapter X is not feasible, the bankruptcy court has no authority to enter an order of adjudication in bankruptcy; it may permit amendment of the petition or dismiss it. See Bankruptcy Rule 10–113. The second provision is that the filing of a Chapter X petition in a pending bankruptcy case, such as a Chapter XI proceeding, acts as a stay of adjudication and of the administration of an estate in bankruptcy. See Bankruptcy Rule 10–104.

The bankruptcy judge's belief that Rule 11–42(b) mandated dismissal or conversion to a bankruptcy liquidation proceeding was not entirely unwarranted. See, e. g., MacNeil v. Gargill, 231 F.2d 33 (1st Cir.), cert. denied, 352 U.S. 833, 77 S.Ct. 50, 1 L.Ed.2d 53 (1956). However, that rule concerning

14. We decline to consider the merits of the order of adjudication. We concur in that regard with the decision of the district court that the order was not clearly erroneous. Rather, we base our analysis strictly on procedural grounds in light of our understanding of the Bankruptcy Act and Rules.

15. The Congressional history indicates that section 328 of the Bankruptcy Act was added to remedy the lack of a provision in Chapter XI corresponding to section 147 of Chapter X,

which allows a petition improperly filed thereunder to be transferred to Chapter XI. H.R. Rep.No.2320, 82 Cong., 2d Sess. 19 (1952), reprinted in [1952] U.S.Code Cong. & Admin. News, pp. 1960, 1980. Rule 11–15, which became effective in 1974, modified the statutory procedure to require transfer to Chapter X if the court finds that the case should have been brought under that Chapter. Advisory Committee's Note to Rule 11–15.

the termination of proceedings in Chapter XI must be read in harmony with the transfer provisions of Rule 11–15 which similarly make it "mandatory" for the Court to set a date for the filing of answers and for a hearing on the motion, and make it compulsory to transfer to Chapter X if the proceedings establish the requisite good faith, *i. e.,* that relief under Chapter XI is inadequate and that the assets of the debtor are capable of enhancement in an ongoing business. *See In re Bolton Hall Nursing Home,* 432 F.Supp. 528 (D.Mass.1977). Moreover, the Bankruptcy Act and Rules should be construed in light of the fact that a debtor has the unqualified right under Rule 11–15(a) to move for transfer to Chapter X at any time during the Chapter XI proceedings.

*Securities and Exchange Commission v. American Trailer Rentals Co.,* 379 U.S. 594, 85 S.Ct. 513, 13 L.Ed.2d 510 (1965), established the proposition that Chapter X and Chapter XI are mutually exclusive procedures. That case and others have been concerned with the distinctions between the Chapter XI rehabilitation proceedings, intended primarily to protect the rights of trade creditors, and those of Chapter X, intended primarily for the protection of public investors. *See, e. g., Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 441–44, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968), *reh. denied,* 391 U.S. 909 (1968); *Securities and Exchange Commission v. American Trailer Rentals Co.,* 379 U.S. at 614, 85 S.Ct. 513. Frustration of a plan of arrangement under Chapter XI would seem to have little if any bearing on the issue of whether corporate reorganization under Chapter X might be a viable and preferable alternative to bankruptcy adjudication. The Court's concern that the interests of creditors be protected could have been provided for equally well by the appointment of a Chapter X receiver as by appointment of a trustee in bankruptcy. In terms of both efficiency and fairness, a better resolution of the issues before the bankruptcy judge would have been afforded the parties had the motion been consolidated and all the movants been allowed to present their evidence. It was improper to consider a motion to transfer to Chapter X to be an "abandonment" of a Chapter XI plan of arrangement and thus grounds for adjudication as a bankrupt. This procedure would frustrate the provisions of the Bankruptcy Act and Rules which allow the option of and transfer between Chapter X and Chapter XI proceedings and would seem to serve no useful purpose. Under the circumstances, it was not within the bounds of the bankruptcy judge's discretion to enter the order of adjudication. *See In re Peoples Loan and Investment Co. of Fort Smith,* 410 F.2d 851, 859–60 (8th Cir. 1969); *In re American Bantam Car Co.,* 193 F.2d 616, 620–21 (3d Cir. 1952); *In re Mid-Center Redevelopment Corp.,* 383 F.Supp. 954, 958 (D.N.J.1974).

Accordingly, we vacate the order of adjudication. Since the disposition of the transfer motions has been rendered moot by the initiation of the Chapter X good faith hearings, we find it unnecessary to remand for their reconsideration. The Chapter X proceedings currently in progress shall be deemed held pursuant to a Rule 11–15 transfer motion to alleviate any confusion as to whether there are multiple cases being adjudicated in different Chapter proceedings. Thus, if the ultimate determination is made that the proposed Chapter X rehabilitation is not feasible, the bankruptcy proceedings may continue under Chapter XI. If the opposite conclusion is reached, the provision that the proceedings will be deemed as being in Chapter X will go into effect. In any event, it will be the bankruptcy judge who must decide on the proper procedure regarding the appointment of the appropriate administrator, a trustee in bankruptcy should the "transfer motion" be denied, or a Chapter X receiver should it be granted and the current receiver prove dissatisfactory to the parties. Certain other action must be taken pursuant to the equitable powers of this Court. *See Friedman v. Snelling,* 526 F.2d 1346, 1348 (1st Cir. 1975); *In re Stanley Karman, Inc.,* 279 F.Supp. 828 (S.D.N.Y.1967). The appoint-

ment of the bankruptcy trustee must be nullified in light of our holding that the adjudication of bankruptcy was premature, and thus the order approving the trustee in bankruptcy's bond is also vacated. That portion of the order appointing the receiver which alludes to the trustee is also rendered void by our decision.

*Reversed.*