# United States Court of Appeals
## For the First Circuit

No. 04-1321

MATRIX GROUP LIMITED, INC.,

Plaintiff, Appellant,

v.

RAWLINGS SPORTING GOODS COMPANY, INC.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

Before

Torruella and Howard, Circuit Judges,
and Stearns,* District Judge.

Peter J. Brann, with whom Matthew P. Schaefer and Brann & Isaacson were on brief, for appellant.
John W. Moticka, with whom Stinson Morrison Hecker LLP, was on brief, for appellee.

August 6, 2004

---

* Of the District of Massachusetts, sitting by designation.

**TORRUELLA**, <u>Circuit Judge</u>. This appeal brings before us the denial of a motion for a preliminary injunction under unusual jurisdictional circumstances. At the same time the district court denied plaintiff-appellant's motion for a preliminary injunction, it granted defendant-appellee's motion to transfer the case to the Eastern District of Missouri. Finding our jurisdiction over plaintiff-appellant's motion proper, we affirm the district court's denial of the preliminary injunction.

## I. <u>Background</u>

Matrix Group Limited, Inc. ("Matrix"), has sold personal and team equipment bags under an exclusive license with Rawlings Sporting Goods Co., Inc. ("Rawlings"), since 1994. Under the licensing agreement, Matrix pays Rawlings a royalty, based on minimum annual sales, and Matrix is required to "use its best efforts to foster and develop the [personal and team equipment bags] and to maximize sales thereof." Rawlings promised that it would "not now or during the term of this Agreement manufacture, sell, distribute, advertize, or promote any personal or team equipment bags that compete with Matrix's [personal and team equipment bags]."

Matrix has met Rawlings's minimum sales targets every year and increased sales for Rawlings-branded personal and team equipment bags from $425,000, prior to the licensing agreement, to more than $2.1 million in 2000. Since then, sales have declined

-2-

steadily, to $1.46 million in 2001 and to just over $800,000 in 2002 and 2003.

In March 2003, K2, Inc., purchased Rawlings and, later that year, also purchased Worth, Inc., a competitor of Rawlings's. By the end of 2003, Rawlings began to implement K2's plan to consolidate the Rawlings and Worth sales force into a single organization. Rawlings began to market Worth brand equipment bags that compete with the personal and team equipment bags produced and sold by Matrix.

A series of negotiations between the parties considering the dissolution of the licensing agreement failed to reach an accord. After Rawlings officially announced the consolidation of Rawlings and Worth in January 2004, Matrix filed suit in the District Court of Maine on January 30, 2004, alleging breach of the licensing agreement.[1] Rawlings thereafter filed an action in the District Court for the Eastern District of Missouri on February 2, 2004, alleging a reciprocal breach of the licensing agreement, namely Matrix's failure to use "best efforts" to sell the personal and team equipment bags.

---

[1] Matrix is a Florida corporation with its principal place of business in Safety Harbor, Florida. Rawlings is a Delaware corporation with its principal place of business in Fenton, Missouri. Matrix's breach of contract suit relies on the parties' diversity of citizenship, which confers subject matter jurisdiction on the district court. 28 U.S.C. § 1332.

On February 12, 2004, Rawlings filed a motion to transfer the District Court of Maine action, instituted by Matrix, to the Eastern District of Missouri, pursuant to 28 U.S.C. § 1404(a). On February 17, 2004, Matrix filed a motion for a temporary restraining order and a preliminary injunction in the District Court of Maine to enjoin Rawlings from (1) wrongfully terminating Matrix's exclusive license with Rawlings to sell the personal and team equipment bags covered by the license, and (2) breaching its contract with Matrix by selling equipment bags that compete with the personal and team equipment bags produced and sold by Matrix under the licensing agreement.

After hearing oral argument on both motions on the same day, the district court ordered the transfer of the case and denied Matrix's motion for injunctive relief. Matrix appeals from the denial of the motion for a preliminary injunction.

## II.  <u>Jurisdiction</u>

Our jurisdiction to hear an interlocutory appeal from the denial of a preliminary injunction is provided by 28 U.S.C. § 1292 (a)(1), which states in relevant part that "the courts of appeals shall have jurisdiction of appeals from . . . [i]nterlocutory orders of the district courts of the United States . . . refusing . . . injunctions . . . ." Under 28 U.S.C. § 1294(1), "appeals from reviewable decisions of the district and territorial courts shall be taken to the courts of appeals . . . [f]rom a district

-4-

court of the United States to the court of appeals for the circuit embracing the district." Matrix's right of appeal under § 1292 (a)(1), therefore, can only be realized in the First Circuit, a sensible result given this court's supervisory duty over the district courts of our circuit. "As [Matrix] filed [its] appeal on [February 27, 2004], before the papers were docketed in [Missouri], this court had already acquired appellate jurisdiction before the transfer was effective. Once jurisdiction is properly obtained by the appellate court it is not terminated by the subsequent completion of a section 1404 transfer." Lou v. Belzberg, 834 F.2d 730, 733 (9th Cir. 1987).

Since this case was docketed in the Eastern District of Missouri on March 25, 2004, though, our power to enforce a reversal of the district court's denial of the preliminary injunction -- should that be our judgment -- takes an unusual cast. We cannot order the Eastern District of Missouri, embraced by the Eighth Circuit, to enter a preliminary injunction. We can, however, order the District Court of Maine to request that the Eastern District of Missouri return the case file so that the District Court of Maine may enter a preliminary injunction.[2] Cf. In re Warrick, 70 F.3d

---

[2] Such an order would interfere with the proceeding of the action in the transferee district. We typically lack jurisdiction over § 1404 transfers. See Codex Corp. v. Milgo Elec. Corp., 553 F.2d 735, 737 (1st Cir. 1977) ("Ordinarily, no appeal can be taken from district court orders on transfers between districts pursuant to 28 U.S.C. § 1404(a) . . . . Although mandamus may be available in such cases, it will be granted, or even considered, only in 'really

736, 740 (2d Cir. 1995) ("This Court's need to protect its jurisdiction justifies the rule that when the transferred case has been docketed in the transferee court despite the petitioner's diligence, this Court can order a district court in this circuit to request the transferee court to return the case.") (ellipses, quotation marks, brackets, and citations omitted).

Suffice it to say that transferring a case outside the circuit while an interlocutory appeal is pending should be disfavored. The preferred procedure is for § 1404 transfer orders to be stayed when issued until any available interlocutory appeals arising from the case are resolved by this court or by expiration of the notice of appeal period.[3] In that manner, we would retain unmediated authority to enforce all judgments that can result from review. In the event, for example, that we should reverse the denial of a preliminary injunction and order an injunction issued by the district court, the stayed transfer order would safeguard the protection against "irreparable injury" that federal courts as courts of equity may provide. Fed. R. Civ. P. 1, 65.

---

extraordinary situations.'") (quoting In re Josephson, 218 F.2d 174, 183 (1st Cir. 1954)).

[3] While the district court did not stay the transfer order, it did retain the docket in Maine. The case was physically transferred upon this court's March 18, 2004 order granting Matrix's motion for expedited appeal and directing the district court to transfer the file forthwith. On March 24, 2004, the Eastern District of Missouri entered the case onto its docket.

Neither Matrix nor Rawlings has called into doubt our jurisdiction to hear this appeal.  Under the circumstances, however, we have deemed it appropriate to identify the difficulties of this peculiar procedural posture with a view to protecting our appellate jurisdiction and ensuring litigants in our district courts the benefits of 28 U.S.C. § 1292(a)(1).  See Bachowski v. Usery, 545 F.2d 363, 367 (3d Cir. 1976) (Though appeals were only permitted from final orders in the nineteenth century, "Congress began to realize . . . that rigid application of the final judgment rule in all cases might inflict irreparable harm upon litigants in certain instances, and might actually have the effect of unnecessarily prolonging the litigation.").  We now turn to the merits of Matrix's appeal.

### III.  **Merits**

The district court stated, following Matrix's briefing, that two actions provoked the motion for preliminary injunction: "One is the sale of the competing bags by the Rawlings sales personnel, the other is the termination of the exclusive license." The court correctly identified the four factors to be balanced in deciding such motions: (1) irreparable injury to the plaintiff; (2) balancing of harms to the defendant; (3) likelihood of success on the merits; and (4) the public interest, if any.  See Rosario-Urdaz v. Rivera-Hernández, 350 F.3d 219, 221 (1st Cir. 2003).  It found that the public interest prong exerted negligible weight and that

the harms to the defendant were minimal. Those findings are neither questioned nor emphasized by the parties.

The district court concluded that Matrix had "a very strong case on both issues" supporting its likelihood of success on the merits. Despite the balance favoring Matrix on these three prongs, the district court determined that "the plaintiff fails . . . in getting injunctive relief from me because of the irreparable injury hurdle."

> This is a classic damage case with a damage remedy, and damages can be assessed both in terms of the sale of the competing bags. There is a history here in terms of the sales that have taken place, and it is not difficult testimony to acquire in terms of projecting that into the future by way of damages with or without expert economists to help.
> It's perhaps slightly more difficult on the termination. . . . I am satisfied that ultimately, the plaintiff can recover the damages that the defendant is causing to the plaintiff's sales and income, that it will be possible to look back in time and to project forward in time to determine the impact of the wrongful termination if that's what it's concluded to be, and of the competing line if the sale of the competing line violates the agreement.

We review the district court's determination for an abuse of discretion. Rosario-Urdaz, 350 F.3d at 221.

Matrix wishes to get leverage from the district court's favorable view of its case on the merits, citing Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 16 (1st Cir. 1996), for the proposition that "[l]ikelihood of success is the main

-8-

bearing wall of the four-factor framework." But the granting of an injunction is an exercise of equity, and the presence of a weak link in the movant's chain would forestall our reversing the district court's denial under the abuse of discretion standard. Therefore, we concentrate on the district court's finding that a damages remedy would prove adequate to compensate Matrix for any injury. See Rosario-Urdaz, 350 F.3d at 222 ("Where a plaintiff stands to suffer a substantial injury that cannot be adequately compensated by an end-of-case award of money damages, irreparable injury exists.").

The district court analyzed the irreparability prong in two stages, tracking Matrix's allegations of Rawlings's breaches; we will do the same.

## A.  **Breach of Non-Compete Clause**

The first breach alleged -- and the one that motivated Matrix's complaint -- involves Rawlings's participation in the sale of Worth's equipment bags and the concomitant breach of the non-compete clause of the licensing agreement. This activity, according to Matrix, injures (1) the value of the exclusive license and (2) its good will and retail relationships. Matrix marshals case law supporting the propriety of an injunction to redress a contractual injury such as its asserted loss in the value of the licensing agreement. E.g., Walgreen Co. v. Sara Creek Property Co., B.V., 966 F.2d 273, 279 (7th Cir. 1992) ("[I]njunctions to

-9-

enforce exclusivity clauses are quite likely to be justifiable by just the considerations present here -- damages are difficult to estimate with any accuracy and the injunction is a one-shot remedy requiring no continuing judicial involvement."). Such authority is insufficient under the procedural posture of this case in which the district court denied rather than awarded the injunction. The district court explicitly addressed the means through which a jury might reach an informed judgment as to the quantum of Matrix's loss, and "[i]t is well settled that the jury is given a good deal of freedom in estimating damages against a defendant who created the risk of uncertainty as to damages by its own wrongdoing." Ocean Spray Cranberries, Inc. v. PepsiCo, Inc., 160 F.3d 58, 63 (1st Cir. 1998). We are satisfied that the district court exercised sound discretion in denying the injunction as to this claim of injury for want of irreparable injury.

It is more difficult to determine whether money damages are ascertainable with regard to any injury to Matrix's good will and relationships with its distributors caused by violation of the non-compete agreement. The district court did not address this point directly in its oral decision. Nevertheless, we find this particular claim of irreparable injury too speculative and unsubstantiated to warrant disturbing the district court's judgment denying an injunction. See In re Rare Coin Galleries of America, Inc., 862 F.2d 896, 902 (1st Cir. 1988) ("Speculation or

unsubstantiated fears of what may happen in the future cannot provide the basis for a preliminary injunction."). In its motion for the preliminary injunction, Matrix supports the irreparability of the injury as follows:

> Rawlings's actions <u>could</u> severely and irreparably harm Matrix's standing with retailers. Rawlings's decision to have its own sales force market competing bags <u>may</u>, by itself, harm Matrix's reputation. Retailers will view the Rawlings and Worth products -- now marketed together by the Rawlings sales force -- as a single product line, and any problems with quality, delivery, etc., related to the Worth Bags <u>are likely to</u> damage Matrix by association. (Emphasis added).

Later in the motion, Matrix argues that

> In the short term, the sale of Worth bags by the Rawlings sales force will dilute the Rawlings sales force's efforts to sell Rawlings equipment bags, and will cannibalize Matrix's Rawlings brand equipment bag sales to a degree that will be very difficult to measure . . . .

These speculations regarding Matrix's fear of a possible injury beyond the loss of sales do not make a prima facie case for a preliminary injunction to stem damages to its reputation and good will owing to Rawlings's breach of the non-compete clause. Matrix did make a strong case that its business would suffer in terms of lost sales, and the district court judged that such losses could be redressed through money damages. This judgment fell within the court's discretion.

**B.   Breach through Termination of the Licensing Agreement**

The second breach alleged by Matrix was Rawlings's termination of the licensing agreement.  The district court was certainly correct that a damages remedy was adequate to redress wrongful termination.  After all, in the months leading up to the parties' falling out, a buy-out of the license was discussed.  Such a sale would put a price on the value of the license to Matrix. The district court, in essence, adjudged that a jury too could put a price on the license, equipped with pertinent expert testimony and historical sales figures.  Again, the district court did not abuse its discretion in denying an injunction to stem the damages following from Rawlings's alleged unilateral termination of the licensing agreement.

## IV.   Conclusion

Because we find no abuse of discretion by the district court, the denial of Matrix's motion for a preliminary injunction is affirmed.

**Affirmed**.