# United States Court of Appeals
## For the First Circuit

No. 22-1750

UNITED STATES OF AMERICA,

Appellee,

v.

ROY SASTROM,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

Before

Montecalvo, Selya, and Rikelman,
Circuit Judges.

Max Rodriguez, with whom Pollock Cohen LLP was on brief, for appellant.

Donald C. Lockhart, Assistant United States Attorney, with whom Joshua S. Levy, Acting United States Attorney, was on brief, for appellee.

March 15, 2024

**SELYA**, **Circuit Judge**.  It is black-letter law that a federal court cannot hear a moot case.  See Gulf of Me. Fishermen's All. v. Daley, 292 F.3d 84, 88 (1st Cir. 2002); In re Cont'l Mortg. Invs., 578 F.2d 872, 877 (1st Cir. 1978).  Even when a case is not moot, however, we may in particular circumstances exercise our discretion and decline to order a certain remedy.  See 13B Charles Alan Wright, et al., Federal Practice and Procedure § 3533.1 (3d ed.).  This is such a case.

Defendant-appellant Roy Sastrom is serving a term of supervised release.  The United States District Court for the District of Massachusetts modified his supervised release conditions, and Sastrom seeks to challenge that modification.  But there is a rub:  Sastrom's case has since been transferred to the District of Connecticut, which is in another circuit, pursuant to 18 U.S.C. § 3605.  Given this transfer, we currently lack authority to adjust Sastrom's supervised release conditions and cannot provide any viable remedy short of requesting the district court to attempt to retrieve this case from Connecticut.  Concluding that we are not obligated either to advise the district court to attempt to retrieve Sastrom's case or to cross jurisdictional lines, we leave the parties where we found them and affirm.

**I**

We briefly rehearse the relevant facts and travel of the case.

- 2 -

**A**

In 1994, Sastrom was acquitted in a Connecticut state court by reason of mental disease or defect on charges of harassment, threatening, and attempted larceny. See Conn. Gen. Stat. §§ 53a-182b(a), 53a-62(a)(2), 53a-49, 53a-125a. These charges grew out of letters that Sastrom wrote while serving a fifteen-year sentence in a Connecticut state prison for the commission of burglaries.

Following his acquittal, Sastrom was committed to the jurisdiction of the Connecticut Psychiatric Security Review Board (the PSRB) for a period not to exceed forty years. On May 31, 2008 — while serving his civil commitment at a psychiatric hospital in Connecticut — Sastrom escaped. He proceeded to burglarize two homes in Maine (one of which belonged to a federal game warden); steal a truck, an air pistol, and ammunition from the warden; purchase a BB gun; and rob a bank. When arrested, Sastrom was transferred to a Connecticut state prison. He later pleaded guilty in the United States District Court for the District of Massachusetts to charges of armed bank robbery and illegal possession of ammunition. See 18 U.S.C. U.S.C. §§ 2113(d), 922(g).

While still incarcerated in Connecticut, Sastrom mailed letters to the United States Supreme Court and the United States Department of Veterans Affairs. Both letters contained the statement "Anthrax Die!" — but neither letter actually contained

anthrax. The letters led to further charges, and Sastrom pleaded guilty to conveying false information and hoaxes. See 18 U.S.C. § 1038(a)(1).

All of these post-escape cases were effectively consolidated and eventually landed in the District of Massachusetts. In 2009, that court (Harrington, J.) accepted Sastrom's guilty pleas and sentenced him to serve a 180-month term of immurement, to be followed by a thirty-six-month term of supervised release.[1] The judgment did not require Sastrom to report to Connecticut during his term of supervised release.

When the district court determined that Sastrom would serve his federal sentence before completing his PSRB commitment, the PSRB lodged a detainer with the Bureau of Prisons (BOP). The detainer requested that the BOP return Sastrom to the PSRB's jurisdiction upon the completion of his federal sentence. See Sastrom v. Conn. Psych. Sec. Rev. Bd., No. 21-640, 2022 WL 226806, at *1 (D. Conn. Jan. 25, 2022).

In 2022 — several months before he was scheduled to be released from federal custody — Sastrom applied for release from his civil commitment (which was set to end in 2034). Although

---

[1] This sentence was imposed in the first of the two cases. The sentence imposed in the second case was of shorter duration and was to run concurrently with the sentence in the first case. Consequently, the second sentence was subsumed by the first, and its details need not concern us.

- 4 -

acknowledging recent improvements in Sastrom's compliance with treatment, the PSRB denied Sastrom's request in August of 2022. The PSRB concluded that Sastrom still "ha[d] a psychiatric disability to the extent that his [d]ischarge or [c]onditional release would constitute a danger to himself or others." Notwithstanding its acknowledgement that Sastrom's compliance with treatment had been "recently improved," the PSRB ordered him confined — upon his discharge from federal custody — in a maximum-security setting, specifically, Whiting Forensic Division (Whiting), a psychiatric hospital in Connecticut.[2]

On September 8, 2022, the probation office requested a status conference in Sastrom's federal criminal case. The probation office's apparent goal was to seek modification of Sastrom's supervised release conditions with a view toward requiring him to report directly to Whiting upon his release from federal custody. The district court (Saris, J.) held a status conference on September 16, 2022. Attorneys for the parties and for the Attorney General of Connecticut were in attendance. Both at the status conference and in a written opposition filed on September 21, Sastrom's counsel asked that the court stay any

---

[2] Sastrom appealed the PSRB's 2022 decision. The Connecticut Superior Court denied his application for discharge from the PSRB's custody on February 20, 2024.

decision on a proposed modification while the PSRB civil commitment decision was still being litigated in Connecticut.

The district court rejected Sastrom's request, stating at the hearing that it would not "decide [Sastrom's] mental health status through the auspices of a supervised release proceeding." Consistent with this view, the district court issued an order on September 22, 2022. In that order, the court directed Sastrom, upon his release from federal custody, to "report directly to the Whiting Forensic Hospital (Connecticut), in accordance with" the PSRB's civil commitment order. The court further ordered that Sastrom's term of supervised release would run concurrently with his civil commitment. And if Sastrom was released from his PSRB commitment during his term of supervised release, he would then be obliged to report to the probation office.

Sastrom was released from federal custody on September 27, 2022. His term of supervised release commenced at that time, and he has since reported to Whiting. On October 4, 2022, he filed a timely notice of appeal of the district court's September 22 order. In his appellate brief, Sastrom claims that the district court abused its discretion by modifying his supervised release conditions and requiring him to report to Whiting.

**B**

Normally, our account of the travel of the case would end here. But certain subsequent events have raised questions

- 6 -

concerning this court's continuing jurisdiction over Sastrom's appeal. On November 4, 2022, the probation office requested that the district court transfer Sastrom's case to the District of Connecticut. Neither Sastrom nor the government objected to the transfer, and on November 9, the district court ordered the transfer of Sastrom's case to the District of Connecticut. The court acted pursuant to 18 U.S.C. § 3605, which authorizes a district court to "transfer jurisdiction over a probationer or person on supervised release to the district court for any other district to which the person is required to proceed as a condition of his probation or release, or is permitted to proceed." Sastrom's case was docketed in the District of Connecticut on December 21, 2022.

## II

In this venue, Sastrom argues that we should vacate the September 22 transfer order because the district court abused its discretion in that it "failed to consider the factors enumerated in 18 U.S.C. § 3583(e) before modifying [his] conditions of supervised release" and overlooked "copious evidence" germane to these factors indicating that he should not have been returned to Connecticut. Sastrom insists that we should instruct the Massachusetts district court to request that the District of Connecticut transfer the case back to the Massachusetts district

court so that the Massachusetts district court may hold a new hearing regarding Sastrom's supervised release conditions.

The government demurs. To begin, it offers several reasons why we lack jurisdiction to reach the merits of Sastrom's appeal. The government adds that — even if we reach the merits of Sastrom's appeal — the district court acted well within the encincture of its discretion.

Federal courts are courts of limited jurisdiction. See United States v. Rydle, 58 F.4th 14, 17 (1st Cir. 2023). Where, as here, a jurisdictional question looms, that question must be addressed before any relief can be granted. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94-95 (1998); Harris v. Univ. of Mass. Lowell, 43 F.4th 187, 191 n.7 (1st Cir. 2022). Accordingly, we start with the two jurisdictional arguments that the government has advanced.

## A

The government first contends that this case is constitutionally moot because Sastrom has already reported to Whiting and "there is no apparent basis for this [c]ourt to order his release from state custody." Therefore, the government argues, there is no "effectual relief" for us to provide with respect to the challenged order.

Our analysis begins with constitutional bedrock. "A case that becomes moot at any point during the proceedings is 'no

- 8 -

longer a "Case" or "Controversy" for purposes of Article III.'" United States v. Sanchez-Gomez, 584 U.S. 381, 385-86 (2018) (quoting Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013)). We have held that a case becomes moot when the court is incapable of affording meaningful relief, that is, relief that will ameliorate the harm alleged. See Gulf of Me. Fishermen's All., 292 F.3d at 88. Such relief need not be "fully satisfactory." Church of Scientology of Cal. v. United States, 506 U.S. 9, 13 (1992). The "power to effectuate a partial remedy . . . is sufficient to prevent [a] case from being moot." Id. "As 'long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" Chafin v. Chafin, 568 U.S. 165, 172 (2013) (quoting Knox v. Serv. Emps. Int'l Union, Local 1000, 567 U.S. 298, 307-08 (2012)).

We recognize that the unique circumstances of Sastrom's case constrain our ability to remedy his alleged injury. The time Sastrom has already spent at Whiting cannot be recaptured, and it does not appear that the district court can simply order his release from state custody. Even so, we cannot say that Sastrom has no "concrete interest, however small, in the outcome of the litigation." Id.

Our decision in United States v. Reyes-Barreto is instructive. See 24 F.4th 82 (1st Cir. 2022). There, the defendant challenged the reasonableness of his prison sentence and

was released from incarceration during the pendency of his appeal, at which point he began serving a term of supervised release. See id. at 84-85. The government argued that the case was rendered moot by the defendant's release, inasmuch as the allegedly unreasonable prison term had already been served. See id. at 85. We disagreed, holding that the defendant "absolutely ha[d] a stake in the outcome of [his] appeal" because, "[i]f we were to determine that his incarcerative sentence was unreasonable, he could seek equitable relief" such as an early termination of his supervised release or a modification of its terms. Id. at 85-86. So it is here: if we were to hold that the district court abused its discretion when it ordered Sastrom to report to Whiting as a condition of his supervised release, and the district court on remand were to hold that its modification of Sastrom's supervised release terms was inappropriate after consideration of the relevant factors, Sastrom could move for equitable relief by way of a reduction of his supervised release term. Such relief could be meaningful to Sastrom if he were to be released from state custody prior to the end of his federal supervised release term, which currently ends in September of 2025. This window of potential relief signifies that Sastrom's appeal is not moot under Article III.

**B**

The government further contends that because this case has been transferred to the Connecticut district court, which is under the jurisdiction of the Second Circuit, we lack statutory jurisdiction to hear the appeal. Sastrom responds by arguing that the district court's order purporting to transfer his case to the Connecticut district court was a "dead letter" because it was issued after a notice of appeal had already been filed and depended on the propriety of the challenged district court order. We hold that, regardless of whether the district court's transfer to the Connecticut district court was appropriate, the transfer did not strip us of statutory jurisdiction to review a pre-transfer order.

The government posits that we lack statutory jurisdiction to review the challenged order because the statute under which Sastrom's case was transferred from Massachusetts to Connecticut district court authorizes the "court to which jurisdiction is transferred . . . to exercise all powers" related to supervised release. 18 U.S.C. § 3605. Consequently, the government says, "the transferee court presides over every facet of supervised release, even with respect to events that predated the transfer order."

The government is on sound ground in asserting that when a case is transferred under 18 U.S.C. § 3605, the transferee court's jurisdiction generally includes facets of supervised

- 11 -

release related to events predating the transfer order — for example, a transferee court has authority "to revoke a term of a defendant's supervised release for violations committed prior to the transfer of jurisdiction." United States v. Adams, 723 F.3d 687, 689 (6th Cir. 2013); see United States v. King, 608 F.3d 1122, 1126-27 (9th Cir. 2010). None of the cases cited by the government, though, addresses whether the appellate court embracing the transferor court lacks jurisdiction to review a pre-transfer order. See, e.g., United States v. Clark, 405 F. App'x 89, 92-93 (8th Cir. 2010) (per curiam) (holding that transferor court, after transfer, no longer had jurisdiction to rule on a pre-transfer motion filed by defendant).

Although there is no case law in our circuit that directly answers this question in the context of 18 U.S.C. § 3605, we have held with respect to a transfer under 28 U.S.C. § 1404(a) that we retained jurisdiction to hear an interlocutory appeal from a pre-transfer order by the transferor court even though the case had since been transferred to an out-of-circuit district. See Matrix Grp. Ltd. v. Rawlings Sporting Goods Co., 378 F.3d 29, 32 (1st Cir. 2004). In Matrix Group, we explained that because appeals from a district court must be taken "to the court of appeals for the circuit embracing the district," 28 U.S.C. § 1294(1), the appellant's right to appeal a pre-transfer interlocutory order could "only be realized in the First Circuit."

Matrix Grp., 378 F.3d at 32. We further held that because the relevant appeal was filed before the case was docketed by the transferee court, "this court had already acquired appellate jurisdiction before the transfer was effective," and jurisdiction was not terminated by the subsequent transfer. Id. (quoting Lou v. Belzberg, 834 F.2d 730, 733 (9th Cir. 1987)).

Although Sastrom's case involves a different transfer statute and a final rather than interlocutory order, we think that our reasoning in Matrix Group applies to the situation at hand. Sastrom's right to appeal the challenged order can be realized only by our review, because the language of 28 U.S.C. § 1294(1) does not permit a Massachusetts district court order to be reviewed by a circuit not embracing the district. Cf. Jones v. InfoCure Corp., 310 F.3d 529, 533 (7th Cir. 2002) (holding "that an otherwise appealable order remains appealable even if a transfer is ordered at a later time" and noting that, "given the language of 28 U.S.C. § 1294[,] it is doubtful that the court of appeals in the transferee area could exercise jurisdiction over an appealable interlocutory order entered by a district court outside its region"). Here, moreover — as in Matrix Group — we acquired appellate jurisdiction before the transfer took effect. Thus, we hold that we have statutory jurisdiction to hear Sastrom's appeal.

Under ordinary circumstances, we would now reach the merits of Sastrom's appeal. But because of the unusual procedural posture of his case and the practical hurdles that Sastrom must clear in obtaining any remedy, we affirm without reaching the merits.

These practical hurdles stem from the fact that Sastrom's case has already been docketed in Connecticut district court and has proceeded there. See Probation Form 12B Petition for Modification of Supervision with Consent of the Offender, United States v. Sastrom, No. 3:08-00240 (D. Conn. Nov. 2, 2023). "Once [such a] transfer is effected, the transferor court no longer has jurisdiction to exercise the powers that may be exercised by the transferee court." United States v. El Herman, 971 F.3d 784, 786 (8th Cir. 2020); see King, 608 F.3d at 1126-27 (explaining that under section 3605's "statutory structure, the transferee court steps into the shoes of the transferor court"). Consequently, we cannot simply remand this case for the Massachusetts district court to reassess the challenged modification to Sastrom's supervised release conditions because the Massachusetts district court no longer has authority over his supervised release. Nor can we order the Connecticut district court to take any equivalent action because that court is part of the Second Circuit, and we have no jurisdiction over it.

To be sure, there is precedent in our circuit for retrieving a case by means of informal mechanisms after it was wrongfully transferred to a court outside of our jurisdiction. In Forty Six Hundred LLC v. Cadence Education, LLC, we held that the case had been erroneously remanded from federal district court to state court. 15 F.4th 70, 80 (1st Cir. 2021). Because the case had already proceeded in state court, we were "unable to identify any formal procedural mechanism for [its] retrieval." Id. Nonetheless, we instructed the district court to "enlist the state court's cooperation and restore the action to its own docket." Id. at 81.

There are some similarities here: Sastrom's case has already proceeded in Connecticut district court, and we cannot identify any formal procedural mechanism for retrieving it. Were we to find for Sastrom on the merits, we could follow Forty Six Hundred's example and direct the district court to attempt to enlist the Connecticut district court's cooperation to retrieve his case. Id.

We are not, however, obligated to provide such a solution. "In some circumstances, a controversy, not actually moot, is so attenuated that considerations of prudence and comity for coordinate branches of government counsel the court to stay its hand, and to withhold relief it has the power to grant." Chamber of Com. v. United States Dep't of Energy, 627 F.2d 289,

- 15 -

291 (D.C. Cir. 1980); see 13B Charles Alan Wright, et al., Federal Practice and Procedure § 3533.1 (3d ed.) ("Remedial discretion is often relied upon to determine that the prospective benefit of an injunction, declaratory judgment, or other specific remedy is too slight to justify decision."). This is such a case. The only remedy we can provide Sastrom is an order directing the district court to attempt to retrieve this case so that it may hold another hearing about Sastrom's supervised release conditions and, if that court determines that the prior modification order was improper, grant an equitable reduction in or end to Sastrom's term of federal supervised release. The likelihood of this process providing any practical benefit to Sastrom is remote — it would only affect his circumstances if he were released from state custody prior to the end of his period of supervised release. His release from state custody before then (September of 2025) appears particularly unlikely following the Connecticut Superior Court's recent denial of his application for discharge from the PSRB's custody. See supra note 2. We add, moreover, that the execution of this remedial process would require expending significant judicial resources. Thus, we exercise our remedial discretion and decline to grant this remedy.

We add that this case is distinguishable from Forty Six Hundred in a key respect. In Forty Six Hundred, we emphasized that "there [was] no question of waiver or estoppel" because the

- 16 -

appellant had "at all times acted expeditiously to preserve its right to a federal forum," including by asking the district court to stay its remand order and, when that request was denied, asking the First Circuit for a stay. 15 F.4th at 79. In contrast, Sastrom did not object to, request a stay of, or appeal the district court's order transferring his case to the Connecticut district court, and his argument that the transfer was improper was raised for the first time in his reply brief. See Sandstrom v. ChemLawn Corp., 904 F.2d 83, 86 (1st Cir. 1990) (holding argument waived because it "was not made to the district court or in appellant's opening brief, surfacing only in his reply brief"). Consequently, we are not inclined to follow the path of Forty Six Hundred and to direct the district court to attempt to retrieve Sastrom's case from Connecticut.

Viewing the matter as a whole, we see little benefit to shuttling Sastrom's case back and forth between district courts. Sastrom has less than two years of supervised release remaining, and — even if his federal sentence were terminated at this moment — his liberty would still be constrained by his civil commitment. As we already have stated, the Connecticut Superior Court recently issued a decision refusing to discharge Sastrom from his civil commitment. Although Sastrom may still pursue other avenues for challenging his commitment, the Connecticut Superior Court's recent denial of his latest entreaty makes it unlikely that he

will secure his release from commitment before his sentence in this case is already near or at its end.

## IV

We need go no further.  We will not order the district court to retrieve jurisdiction of Sastrom's case and, thus, we will not disturb the existing situation.


**Affirmed**.