**CONCILIO DE SALUD INTEGRAL DE LOIZA, Plaintiff**

v.

**Hon. ROSA PÉREZ PERDOMO, Secretary of Health of the Commonwealth of Puerto Rico in her official capacity, Defendant.**

**Civil No. 03–1640 (GAG).**

United States District Court,
D. Puerto Rico.

March 27, 2007.

PHV James L. Feldesman, PHV Robert A. Graham, Feldesman, Tucker, Leifer, Fidell LLP, Washington, DC, Ignacio Fernandez–De–Lahongr, Fernandez & Alcaraz, PSC, San Juan, PR, for Plaintiff.

Eduardo A. Vera–Ramirez, Eileen Landron–Guardiola, Arlene R. Perez–Borrero, Landron & Vera LLP, Guaynabo, PR, Elfrick Mendez–Morales, Mendez & Mendez, Urb. Roosevelt, Patricia Lorenzi, Delgado & Fernandez, Fernandez Juncos Station, San Juan, PR, for Defendant.

## OPINION AND ORDER

GELPI, United States Magistrate Judge.

The parties to this action have cross-moved to have the court, on the one hand, convert its preliminary injunction (*see* Docket Nos. 48, 63, 82) to a permanent one, and, on the other hand, vacate the same. Plaintiff sustains that the Commonwealth continues to violate the directives of the Medicaid statute pertaining to wraparound payments. The Commonwealth, however, posits that it has established an office within its health department which permits it to fully comply with said federal law. On December 7, 2006 the court held an evidentiary hearing on the matter (*see* Docket No. 476–transcript). Following the hearing, the parties submitted memoranda (Docket Nos. 474, 486 & 495).

## I. The Medicaid Wraparound Statute and its Applicability to Puerto Rico

In order to analyze the controversy at hand it is essential to once again provide some background on the Medicaid wraparound statute as it pertains to the Commonwealth.

The Medicaid program, 42 U.S.C. § 1396 *et seq.*, begun in 1965, is jointly supported with federal and state funds and directly administered by state governments. Its purpose is to provide medical assistance to indigent families with dependent children, as well as indigent disabled blind, and aged individuals. *Rio Grande Community Health Center, Inc. v. Rullan,* 397 F.3d 56, 61 (1st Cir.2005). The Commonwealth of Puerto Rico is a "state" for purposes of the Medicaid statute, 42 U.S.C. § 1301; *Rio Grande,* 397 F.3d at 61.

A state need not participate in the Medicaid program. However, once it opts to do so, it must comply with all federal requirements. Puerto Rico opted to participate in the Medicaid program. *Rio Grande,* 397 F.3d at 61–62.

One requirement of the Medicaid program, relevant here, is that participating jurisdictions must provide federally-qualified health center services. 42 U.S.C. §§ 1396a(a)(10)(A); 1396d(a)(2)(C); Rio Grande, 397 F.3d at 61. Plaintiff Loiza is one of the several "federally-qualified health centers" ("FQHCs") in Puerto Rico. It receives grants under Section 330 of the Public Health Service Act and serves a medically underserved area. 42 U.S.C. § 254b; *Rio Grande,* 397 F.3d at 61.

Federal law regulates how FQHCs receive payment of services provided to Medicaid patients. *Rio Grande,* 397 F.3d at 61. Effective January 1, 2001, Congress established a new payment system known as the "Prospective Payment System" ("PPS"). 42 U.S.C. § 1396a(bb)(2)-(3); *Rio Grande,* 397 F.3d at 61. Applying a mathematical formula set by the statute, each participating jurisdiction was required to make a baseline calculation for Medicaid reimbursement to FQHCs. This

initial calculation took into account FQHC data from 1999, 2000 and 2001. Each subsequent year each jurisdiction has to prospectively revise its data for that particular year's FQHC Medicaid reimbursements. *Rio Grande*, 397 F.3d at 61–62.

In Puerto Rico, as in some other jurisdictions, FQHC reimbursement is greatly complicated. This is so because the Commonwealth employs a managed case approach for the operations of its Medicaid system. *Id.* at 62. The Commonwealth contracts with managed case organizations (MCOs) to arrange for providing of medical services to Medicaid patients. *Id.* It then pays a monthly fee to each MCO. However, if a MCO does not own hospitals or clinics it must subcontract with FQHCs in order to provide Medicaid services. *Id.*

The underlying problem leading to the filing of this action arises in the following manner. When the MCO contract with a FQHC gives the FQHC less amount of compensation that it is supposed to receive under the PPS system, the Commonwealth must make a supplemental "wraparound" payment to the FQHC. This wraparound payment will make up for the difference the FQHC is owed. 42 U.S.C. § 1396a(bb)(5); *Rio Grande*, 397 F.3d at 62. Federal law requires that wraparound payments be made at least three times a year. *Rio Grande*, 397 F.3d at 62, 74.

## II. *The Commonwealth's Non–Compliance with the Wraparound Statute*

Subsequent to the wraparound statute's date of effectiveness—January 1, 2001, the Commonwealth failed to establish a PPS system. *Rio Grande*, 397 F.3d at 62. No wraparound payments were thus made by the Commonwealth to any FQHC from January 1, 2001 until March 31, 2004. On the latter date, this court entered a preliminary injunction (Docket No. 48) ordering the Commonwealth Secretary of Health to make such payments to Loiza. This injunction was upheld on appeal *Id.* at 56–77. The court's preliminary injunction order established the PPS baseline calculations to be used in computing wraparound payments to Loiza (*see* Docket No. 48 at page 3); *Rio Grande*, 397 F.3d at 66. In other words, the court, at the time, had to step in and remedy the Commonwealth's non-compliance with the Medicaid statute.

## III. *Does the Establishment of the Health Department's PPS Office Require the Court to Dissolve its Preliminary Injunction?*

Following the entry of the preliminary injunction and the appellate ruling upholding the same (issued on February 14, 2005) the Commonwealth failed to establish a PPS system. The court thus had to again step in and continue calculating the wraparound payments owed to Loiza (*see, e.g.*, Docket Nos. 53, 64, 71, 224, 311, 313, 315).

In March 2006, the new Secretary of Health, Dr. Rosa Pérez Perdomo, finally took steps to establish a PPS office within the Health Department. (Tr. at 9–10). A finance director, supervisor coordinator and administrative assistant were appointed, while a position for an accountant was created (Tr. 168–169). A PPS employee manual was completed (Tr. 53–54); *see* Exhibit UU.

The PPS office further issued a detailed instruction manual to FQHCs which states the required documents, terms, due dates to submit information, and objection procedure (Tr. 113–115); *see* Exhibit WW. This manual was provided to plaintiff. *Id.* Said manual, in accordance with 42 U.S.C. § 1396a(bb)(5)(B), indicates that any due payments must be calculated on a quarterly basis (Exhibit WW at page 2).

The PPS office is taking necessary steps to more rapidly process wraparound infor-

mation (Tr. 58–59). Presently, all information is obtained form FQHCs. In the future, the information will be obtained directly from the Commonwealth Health Service Administration and insurance companies. *Id.*

In its post-hearing memorandum, plaintiff does not contest the above facts of record pertaining to the PPS office. Notwithstanding, plaintiff makes a general assertion that the "PPS office is not equipped to enforce Medicaid statute-required FQHC—related rights" (Docket No. 474 at page 2). Further, plaintiff points to the fact that Department of Health officials admitted PPS payments to FQHCs cannot be assured because they are controlled by another government body. *Id.* Finally, plaintiff posits that the Commonwealth has incurred in a plethora of other Medicaid statutory violations *Id.* at 5–18.

At the outset, the court notes that only one Medicaid claim of plaintiff is properly before it. This claim is exclusively limited to the wraparound payment requisite of the Medicaid statute. *See Rio Grande,* 397 F.3d at 74. No other claims are properly before this court at this time. Accordingly, the court will limit itself to the controversy at bar. This is not to say that plaintiff is in any way impeded from pursuing other Medicaid claims in a separate and future proceeding.

Plaintiff does not contest the Health Department PPS office's ability to readily and properly calculate Loiza's wraparound due payments. Instead, the thrust of plaintiff's argument, as evidenced during witness cross-examination at the December 7, 2006 evidentiary hearing, is as follows. Assuming that the PPS office properly performs its function, there is no future guarantee that Commonwealth monies will be available to pay the wraparound sums due. As recognized by Mad-

am Secretary, contrary to the States, Puerto Rico receives but a fraction of Medicaid monies from the federal government. (Tr. 15, 47–48). Notwithstanding, the Commonwealth is required by federal law to comply with the wraparound scheme just as if it were a state. *Id.* The result is that in the case of Puerto Rico the additional monies granted to states by the federal government for wraparound payments are unavailable. These extra sums, in the millions of dollars, must then necessarily come from the Commonwealth fisc and be approved by the legislature. For example, in a state, Medicaid matching occurs on a fifty-fifty (50–50) basis. In Puerto Rico it is on a twelve-eighty eight (12–88) basis, the Commonwealth having to provide the much larger amount (Tr. 180–182).

Plaintiff is concerned that there may come a point in time when Loiza, due to the above predicament, is unable to receive wraparound payments. Such speculative fear, in and of itself, however, is legally insufficient for the court at this time to continue issuing injunctive relief. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.,* 527 U.S. 308, 340, 119 S.Ct. 1961, 144 L.Ed.2d 319 (1999) (citing Wright, Miller & Kane) ("speculative injury is not sufficient [to demonstrate irreparable injury]"); *Matrix Group Ltd., Inc. v. Rawlings Sporting Goods Co., Inc.,* 378 F.3d 29, 35 (1st Cir.2004) ("speculation on unsubstantiated fears of what may happen in the future cannot provide the basis for a preliminary injunction"). More so, insofar as Loiza (the only plaintiff now in this federal suit) is concerned, the Secretary of Health has always fully complied with this court's orders to make wraparound payments to plaintiffs Loiza and Belaval.

There being no other specific challenges to the PPS office itself, the court finds that

the Secretary of Health is in present compliance with the wraparound payment statute. A permanent PPS office is now in place. Plaintiff does not challenge the contents of its employee and FQHC manuals (*see* Exhibits UU and WW); nor does plaintiff challenge the qualifications of the PPS office staff. More significant, the Department of Health has in fact issued non-court-ordered wraparound payments, as a result of direct request of other FQHCs (*see* Tr. 86–88; *see also* Exhibit ZZ), as well as when ordered by this court. There is no evidence of record to the effect that, since the creation of the PPS office, the Department of Health has in fact been unable to make a specific wraparound payment because of lack of funds. Madame Secretary further indicated that in the event this were to occur, she would request the governor and legislature for additional emergency funds in order to comply with the Medicaid statute (Tr. 22–23).

## IV. *CONCLUSION*

In light of the above, the Court hereby vacates its preliminary injunction (Docket Nos. 48, 63 & 82) directing the Secretary of Health to issue wraparound payments to plaintiff Loiza. This order is effective immediately and applies prospectively. Hence, Loiza's requests for an order directing wraparound payment for the third and fourth quarters of 2006 (Docket 464) are still properly under the court's consideration.

The Secretary of Health is free to calculate 2007 and future wraparound payments for Loiza using its current data. See Rio Grande, 397 F.3d at 62, 63. Notwithstanding, the Secretary shall continue to apply *to Loiza* the same baseline calculation data used by the court. *See* Order of March 31, 2004 at page 3 (Docket No. 48); *Rio Grande*, 397 F.3d at 66. It has been two (2) years since the Court of Appeals af-

firmed the order of this court calculating Loiza's wraparound baseline. To revisit this issue now would unfairly warp Loiza back in time to early 2004, when this issue first surfaced. This would unnecessarily prolong this case which is now about to conclude. It would further require the court to again involve itself in burdensome and time-consuming matters and analysis, likely requiring a further evidentiary hearing. For example, if the court were to now revisit the issue, defendant will contend that the baseline rate is actually much lower than that adopted in its March 31, 2004 order (Docket No. 48). If so, this would require the court to vacate all of its orders directing payment to Loiza, and possibly, direct Loiza to now reimburse the Department of Health.

The court is unwilling to engage in such an exercise now. It is simply too late for this. If an error in calculation was made by the court, the government will simply have to live with it, and can only blame itself for the consequence of its laches. This would not have happened if in 2001 the Commonwealth had complied with the Medicaid statute, or, if shortly after the First Circuit's February 2005 ruling it had provided to the court corrected baseline calculations for Loiza. Equity aids the vigilant, not those who slumber on their rights.

Final Judgment shall be entered once the court rules on the pending 2006 wraparound payment petitions.

**SO ORDERED.**