Mr. Justice CLIFFORD
 

 delivered the opinion of the court.
 

 Complicated, as'the record is, it will be impossible to state the questions presented for decision, in a manner to be understood, without referring to the original proceedings in the District Court, as the suit, when it was commenced, was a libel
 
 in rem
 
 filed by two mariners, J, D. Cox and J. N. Geren, against the steamboat Lottawanna, her tackle, apparel, machinery, and furniture, in a cause of subtraction of wages, civil and maritime.
 

 Prior to the institution of the suit the allegation is that the steámer had been engaged in commerce and navigation between the port of New Orleans and various other ports and places on Red River and its tributaries, and that the libellants, during that period, were duly employed by the master as the pilots of the steamer, and that they continued in that employment for the respective periods and at the monthly wages spécified in the libel. They also allege that they faithfully performed their respective duties, as such pilots, and that there, is due to them the respective sums charged in the schedule exhibited in the record. Wherefore they pray for process against the steamer, &c., and that she may be condemned and sold to pay their respective claims:
 

 Pursuant to the prayer of the libel a warrant was issu,ed,
 
 *211
 
 and the return of the marshal shows that he seized the steamer and. that he published a monition, citing and admonishing tfae owners, and all others claiming any right, tille, or interest in the steamer, to appear, on a day therein named, at the District Court, and show cause, if any they have, why the prayer of the libel should not be granted. Subsequently, on the same day, the libellants filed a.petition in the District Court, representing that the steamer was expensive to keep'and perishable, and prayed for an order that she might be sold.
 

 .On the same day, also, Moses Morgan filed an affidavit in the case, stating that he owned three-fourths of the steamer, and that he had no objection that she should be sold, and the record shows that the court immediately passed an order that the steamer be sold by the marshal, he giving legal notice of the sale, and that the proceeds be deposited in the registry, subject to. the'further order of the court. Nothing is exhibited to show that there was any irregularity in the sale, and it appears that the proceeds, amounting to ten thousand five hundred dollars, were deposited in the registry of the court.
 

 Before the other owner of the steamer, Philip Work, appeared, seventeen libels of intervention were filed in the coui’t against the proceeds of the sale of the steamer, embracing some forty interveners, with claims for wages as mariners, and claims for materials for repairs, and for stores and supplies, and for money loaned for the steamer, or for the individual owners, and to pay for debts contracted by the master, or owners, for repairs and supplies during a period of two or more years.
 

 On the fourth of February, 1871, more than a month after the original libel was filed, Philip Work appeared and filed a claim that he was the owner of the other undivided fourth, part of the steamer, and he excepted to all of the libels of intervention except the one filed by the, mariners, being the libel of intervention first named in the reeord, and upon three grounds, and prayed that the interventions might be dismissed: (1.) Because the,court was without jurisdiction,
 
 *212
 

 ratione maierice,
 
 of the matters alleged in the several libels. (2.) Because the court was without jurisdiction to entertain the intervention's .or to adjudicate thereon, for the reason that all of the owners of the steamer, at the date of the several causes of action set forth,-were, citizens of that State and resided in the city of New Orleans, at which port the steamer was registered and enrolled. (3.) Because the re-' spective interveners did ‘not, on filing their libels, give stipulations, with sureties, to abide the final decree rendered in the case, and to pay costs, as required by. the rules in admiralty proceedings.
 

 Intervention was subsequently claimed by other parties ánd other directions were given, which it becomes important to-notice, in order to have á full view^pf all the material proceedings in the District Court.
 

 Libels
 
 in personam
 
 were also filed by the appellees and by John Chaffee and Charles Chaffee, who are the last-named appellants. By the transcript it appears that the libel of the appellees was filed on the sixth of February, 1871, and that the libel of the said appellants was filed on the following day. Service of the original monition was made January first, 1871, and on the seventh of February succeeding the court passed an order that the delay allowed bylaw having expired, and no answer having been filed, that all persons interested in the property seized be pronounced in contumacy and default, and that the libel in the principal case be adjudged and taken
 
 pro confesso.
 

 On the thirteenth of the same month the court entered a decree in favor of the libellants, as follows: that J. D. Cox recover the sum of one thousand three hundred and six dollars, and that J. N. Geren, the other libellant, recover the sum of six hundred and- seventy-four dollars and twenty-eight cents, from which decree neither the libellants nor the owners of the steamer have ever appealed.
 

 On the third of March, 1871, subsequent to the said decree, Jesse K. Bell filed a libel of intervention, claiming the sum- of two thousand two hundred dollars, as paid by him on two claims for fuel furnished to the steamer by the per
 
 *213
 
 sons named in the libel. Leave was granted to the applicant to file' the libel, and .on the same day the court passed an order that the cause be referred to a commissioner to report upon a tábleau of distribution, and to classify the various claims according to law; giving all parties a right to take further evidence before the commissioner.
 

 •Since that time further libels of intervention have been filed as follows, to wit; one by J. Sharp McDonald, on the eighteenth of the same month, for five hundred and forty boxes of coal; another by Thomas Onley & Co., on the-thirty-first of the same month, for services, the account-being approved by the master and by the mate; and one other by Christian &.Hyatt, on the second of Máy in the same-year,' for stationery furnished for the use of the steamer.
 

 Besides the libel filed by the two pilots, a libel
 
 in rem
 
 was also filed by the maté against the steamer, on the thirtieth of December, 1870, for the balance due him for wages, and the record show's that the- court, on the tenth of February next after the commencement of the suit, entered a decree in his favor for the amount claimed.and taxable costs.
 

 Morgan and Work failed, to answer the- suit
 
 in personam
 
 of Kennett & Bell against them, and the court, on the twentieth of November, 1871, passed an order that the libel be taken
 
 pro
 
 confesso; and.that a decree; be entered in favor of the libellants, and three days later it was ordered that- the suit be consolidated'with the record in the original suit
 
 in rem
 
 against the steamer.
 

 Different proceedings took place in the suit
 
 in personam
 
 commenced-by Chaffee & Brother, as Joseph Morgan appeared on the same day and confessed judgment in favor of the libellants for the sum of ten thousand eight hundred and ninety-six dollars and fifty-six cents, with eight per cent, interest from the twenty-third of January preceding. Judgment was accordingly rendered in their favor ágainst Morgan for that amount. Work made -default, and a decree, dated June ls,t, 1871, was entered ágainst him for the same amount in favor of the same.libellants.
 

 Report in due form was made .by the commissioner, on
 
 *214
 
 the fourth of May in the same year. He decided that none of the creditors, presenting claims for repairs and supplies, had any right to libel the steamer in her home port, and recommended that the proceeds in the registry of the court be distributed as follows: First, that all legal costs be paid in full. Secondly, that all claims of the seamen for wages be paid in full. Thirdly, that all claims for labor, supplies, and materials for repairs, be paid
 
 pro rata,
 
 according to the schedule of claims annexed to the report.
 

 Exceptions of various kinds were filed to the report of the commissioner: (1.) That certain claims were, allowed which were not due from the owners of the steamer, or were, in whole or in part, improperly classified as claims for stores or for supplies and repairs. (2.) That the schedule improperly includes claims not having any maritime lien on the steamer or the proceeds in the registry of the court, nor entitled to any preference by attachment or otherwise. (3.)
 

 . That the compensation charged by the commissioner is excessive.
 

 Pending the hearing of the exceptions to the report of the commissioner the court passed an order that the claims for costs and the claims of the seamen for wages should be paid, and it appears that the order was promptly carried into effect, but the residue of the report was finally referred back to the commissioner for further proceedings. In the meantime the appellees here, having obtained judgment against the owner’s of the steamer in their suit .in
 
 personam,
 
 sued out a garnishee process from the sixth District Court of the State, and attempted to attach the proceeds as money in the hands of the clerk of the District Court. All parties were again heard by the commissioner, and, on the fourth of June following,- he made a supplemental report. In his second report, he decided'that, where there is a maritime lien upon the vessel, the lien, will attach to the proceeds in case the vessel is sold, and the proceeds are paid into the registry of the court, but where there is no maritime lien upon the vessel, that the proceeds should not be distributed, if the owners make opposition to the application, unless the appli
 
 *215
 
 cants prove that they have some
 
 legal or equitable interest m
 
 the subject-matter, and the commissioner being of the opinion that the interveners had no maritime lien, reported that the proceeds remaining in the registry of the court could not be distributed for their benefit in this case, and recommended that the court order either that thé proceeds be paid over to the owners of the steamer or to the sheriff who seized the same in the hands of the clerk acting as registrar, under the garnishee process.
 

 Seasonable exceptions were filed to the report by .many of the interveners opposed in interest to its conclusions, including the last-named appellants. Due notice having been given, the parties were heard, and the court entered a .decree that all the interventions in the cause, founded on claims which are not liens in admiralty, be dismissed at the cost of the respective parties'. All such parties, including the last-named appellants here, claimed an appeal to the Circuit Court, and. the record shows that the appeal in their behalf was duly allowed, and that they filed an appeal bond, executed to the owners of.the steamer and the appellees in this court. Certain other interveners also petitioned for an appeal, and the court passed an order granting it, without requmng any additional bond, iu consequence of which omission the present appellees, on the twentieth of December following, moved the District Court to set aside and dis,miss the last-named appeal, and the record shows that the court, on the twenty-fifth of January following, granted the motion and vacated and annulled the appeal.
 

 Seamen’s wages and costs having been paid, the interveners whose appeal was allowed moved the court,'on the eleventh of January, 1872, that the fund in the registry of the court be transferred to the Circuit Court, which motion was for a time held under advisement. During that period the District Court, on the sixth of February following, entered a decree that the proceeds in the registry of the court be applied, first, to the satisfaction of the judgment of the present appellees against the owners of the steamer; and,
 
 *216
 
 second, that the balance, if any, be paid' over to Chaffee' & Brother, seizing creditors, next in rank.
 

 Application for an appeal by Chaffee & Brother was made on the following day, and on the tiventy-sixth of the same month the court Qverruled the motion to transfer the fund into the Circuit Court, and the last-named motion for an appeal, and ordered that the fund be paid over as directed in the order previously given upon that subject Chaffee & Brother, however, were among the petitioners for the appeal. which, was previously allowed by the court, and their names appear in .the bond which was filed to prosecute the appeal, but they were libellants
 
 in personam
 
 and not strictly interveners in the original suit prosecuted
 
 in rem
 
 by the two pilots.
 

 Copies of all the material orders, directions, and proceedings in the original suit, and in the several suits of
 
 Allen
 
 v.
 
 The Steamer, Kennett & Bell
 
 v.
 
 The Owners,
 
 and
 
 Chaffee & Brother
 
 v.
 
 The Owners,
 
 were sent to the Circuit Court under the cértificate of the clerk of the District Court, together with-copies of all documents filed and of the minutes of all the evidence introduced in those several cases, and-the .case was entered in the Circuit Court, on the twenty-niuth of May, 1872, under the title of
 
 J. D. Cox et al.
 
 v.
 
 The Steamer,
 
 which is the title of the original suit in the District Court, from which no appeal was ever taken, either by the libellants or the owners.
 

 Appearance was entered by Kennett & Bell, and they moved to dismiss the appeal for the following reasons-: (1.) Because the appeal was discharged in the District Court, which is; not sustained by the record. (2.) Because the bond filed is irregular and not such as the law requires; and the Circuit Court having affirmed the decree of the District Court granted the motion to dismiss.
 

 Immediate application for an appeal to this court was 'made by the present appellants, which was allowed by the .Circuit Court, and the petitioners gave bond with surety to the present
 
 appellees el als.
 
 to pay all such damages as they
 
 *217
 
 may recover against the appellants, in case it should be decided that the appeal was wrongfully obtained.
 

 Irrespective of the question whether the appeal is regular or. irregular it is quite clear that the decree of the Circuit Court must be reversed, as one part of it is repugnant to anothér part. Plainly, if the appeal was regular, it was error to dismiss it; and if it was so irregular that it became the duty of the court to dismiss it, the Circuit Court had no jurisdiction to affirm the decree of the District Court. Cases of admiralty and maritime jurisdiction, where the matter in dispute, exclusive of costs, exceeds the sum or value of fifty dollars, may be, removed from the District Court into the Circuit Court by appeal, and the provision is that such appeals shall be subject to the same rules, regulations, and restrictions as are prescribed by law in case of writs of error.
 
 *
 
 Jurisdiction .in such eases is given to the appellate court by the appeal or writ of error, as the case may be, which ceases to exist, even if regular, when the appeal or writ of error is dismissed, or if not regular in essentia] particulars, then jurisdiction does, not attach for the purpose of affirming the decree upon the merits.
 
 †
 
 Argument to support these conclusions is not necessary, as they are self-evident, but inasmuch as the case must be remanded for a new hearing, it becomes necessary to examine some of the questions which the anomalous proceedings present for consideration:
 

 Most of the claims of the interveners were for stores, materials for repairs, or for labor and supplies furnished to the steamer, either at the request of the master or at the request of one or both of the owners, in the home port of the vessel. More than half a century ago this court decided, in
 
 The General Smith,
 

 ‡
 

 that where repairs and supplies are furnished to a ship in her home port, or in a port of the State to which the ship belongs, that no maritime lien is implied, nor any other lien unless it is given by the local law, by which the rights of the parties in such a case is altogether governed.
 
 *218
 
 Where necessary repairs have Been made or necessary supplies furnished to a foreign ship, or to a ship-in a port of a State to which the ship does not belong, the general maritime law, as all agree, gives the party a lien on the ship itself for his security, which may be enforced in the admiralty by a proceeding
 
 in rem ;
 
 but the court decided, in'the case .before mentioned, that as to .such repairs and supplies furnished to a ship in her home port, or in a port of the State to which the ship belongs, the case is governed by the local law, and that no lien arises unless given by the local law. All the Federal courts were governed by those rules for years, and little or no difficulty arose in practice, as most or all of the States enacted laws giving.a lien for the protection of material-men in such cases, and this court adopted a rule authorizing a proceeding
 
 in rem
 
 against domestic ships, “ where by the local law a lien was given to secure the payment of contracts iu such cases for supplies, repairs, or other necessaries.” Since that time, however, that rule has been repealed and a new one adopted in its place, which does not authorize a proceeding
 
 in rem,
 
 except where there is a claim founded on a maritime lien against a foreign ship, or against a ship in a foreign port, or the port of a State other than that to which the ship belongs.
 
 *
 
 Attempts were made by the States to obviate the embarrassment which grew out of the repeal of that rule, and the adoption of the new rule withdrawing the use of the process
 
 in rem
 
 from the District Courts to enforce the payment of claims for repairs and supplies’furnished to domestic ships, but this court decided in several cases that the State legislatures could not create a maritime lien, nor'could they confer jurisdiction upon a State court to enforce such a lien by a suit or proceeding
 
 in rem
 
 'ás pi’acticed in the admiralty courts.
 
 †
 

 
 *219
 
 Much embarrassment has existed ever since the old twelfth admiralty rule was repealed, as the new rule makes no provision to enforce the payment of contracts for repairs and supplies furnished to domestic ships, except by a libel
 
 in personam.
 
 Repeated judicial attempts have been made- to overcome the difficulty, none of which have proved satisfactory, because they failed to provide a remedy in the admiralty by a proceeding
 
 in rem.
 
 Inconveniences of the kind have been felt for a long time, until the bench ánd the bar have come to’ doubt whether the decision that a maritime lien does not arise in a contract for repairs and supplies furnished to a domestic ship is correct, as it is clear that the contract is a maritime contract, just as plainly as the contract to furnish such repairs and supplies to a foreign ship or to a domestic ship in the port of a State other than that to which the ship belongs.
 
 *
 
 Such a remedy is not given even in the latter case, unless the repairs and supplies were furnished
 
 on the credit of the ship,
 
 and it is difficult to see why the same remedy may not be given in the former case if the repairs and supplies were obtained by the master on the same terms.
 
 †
 
 These and many other considerations have had the effect to dreate serious doubts as to the correctness of the decision made more than fifty years ago,
 
 ‡
 
 that a maritime lien does not ai’ise in such a case.
 

 Expressions, however, to the same effect are found in other opinions of this court, and inasmuch as the question is not satisfactorily put in issue in the pleadings in this case, and does not appear to have been directly presented to the Circuit Court by either party, the court here is.not inclined to enter more fully into the consideration of it at the present time.
 

 None of the interveners'alleged in
 
 direct terms
 
 that they had a maritime lieu upon the steamer or the proceeds in the
 
 *220
 
 registry of the court. Many libels of intervention were filed subsequent to the sale of the steamer, and some of them con tain'a prayer that the court will decree the payment of'the claim of the libellant,
 
 vnlh privilege
 
 on the steamer or the proceeds, but-in no cáse does the' libellant allege in terms that the contract set forth in the libel constitutes a maritime lien upon the steamer or the proceeds in the registry of the court, nor does the libellant pray for process to enforce any such lien.
 

 Doubtless the maritime lieu is, in many cases, well described
 
 as a privilege
 
 in the thing, but the State jaw, which-cannot be enforced in the admiralty, also gives material-men a privilege or lien in such cases, and
 
 in view of that fact
 
 it may well be questioned whether the allegation in the libels is sufficient to apprise the owners of the specific nature of the interest which the libellants claim in the proceeds, as the rule of decision in the Federal courts has been formally years that a maritime lien does not arise in subh a case. Any person having an interest in the proceeds may intervene
 
 pro interesse suo,
 
 but he ought to allege enough to apprise the owner of the nature of the interest.claimed.
 
 *
 

 - Most or all of the .claims were referred to a commissioner to report a tableau of distribution, and no exception was taken to the order of the court appointing the commissioner. He decided that none of the claims, except those for seamen’s wages, constituted a maritime lien, and.none of the libellants excepted to the report upon that precise ground. On the contrary they seem rather to have acquiesced in that part of the report; and in the view adopted by the district judge, that it was competent for him to decree that the respective claims should be paid out of the proceeds in the registry of the court, irrespective of the question whether the claimants had or had not any maritime .lien or other legal interest in the same. Such must, it would seem, have been the view of the district judge, as he ultimately
 
 *221
 
 confirmed the report and directed the proceeds to be paid to two claimants, both of whom were libellants
 
 in personam
 
 and judgment creditors of the owners. By "confirming the report he decided that none of .the. libellants whose claims were for repairs and supplies had any maritime lien, but in the decree ordering the payment of the two claims he departed from the report of the commissioner, as the latter decided that, inasmuch as opposition was made by the owners,, the proceeds could not be distributed among the interveners who had no maritime liens. Apparently the district judge must have been of the opinion that the proceeds wmre subject to his order of distribution among the creditors of the owners, or that the two claimants acquired some right or interest in the proceeds, either by their judgments against the owners or by virtue of the proceedings under the garnishee process against the clerk as the registrar of the District Court.
 

 Beyond doubt maritime-liens upon the property sold by the order of the admiralty court follow the proceeds, but the proceeds -arising from such a sale, if the title of the owner is unincumbered and not subject to any maritime lien of any kind, belong to the owner, as the admiralty courts are not courts of bankruptcy or of insolvency, nor are they invested with any jurisdiction to distribute‘such property of the owner, any more than any other property belonging to him, among his creditors. Such proceeds,,if unaffected by any lien, wheu all legal claims upon the fund are discharged, become by operation of law the absolute property of the owner.
 
 *
 

 Subsequent to the seizure any person may enter an appearance to protect any interest he may have in the property, or he may commence a second or subsequent suit to enforce any claim he may have against it, or he may take legal measures to prevent the release of the property under arrest, or to prevent the payment of the proceeds out of the
 
 *222
 
 registry.
 
 *
 
 Defence may be made to a suit
 
 in rem
 
 by any person who has an
 
 interest
 
 in the thing seized; as for example, a mortgagee may appear ahd defend a salvage or wages suit,- or the assignee of a bankrupt owner may appear and contest any. claim against the property of the.bankrupt, or underwriters,, if they have accepted the abandonment, may-also appear and defend against any claims adverse to their interest iu the property, but a person who has merely a collateral interest in some question involved in the suit and has no actual concern iu the subject-matter of it, cannot be allowed to intervene in the proceedings.
 
 †
 

 Where the property is already under arrest and a second or subsequent suit is instituted, it is not necessary to take out a second warrant of arrest, as a citation
 
 in rem
 
 is sufficient, instead of a warrant, commanding the marshal to cite all persons who- have, or claim to have, any right, title, or interest in the property, to enter an appearance in the cause on or before the day therein named, the service of which is sufficient to protect the rights of the intervener. Notice to the owners in some form must be given in such cases, else the decree will not conclude the owners.
 
 ‡
 

 ' Decided cases may be found which afford some support to the proposition that, the proceeds in the registry of the" court, if the lien claims are all discharged, may be distributed equitably among the intervening creditors of the owners, but the court is of the opinion that the rule that the pro.ceeds in .that state of the case belong to the owner is correct in principle, and that the weight of authority is in its favor, notwithstanding those cases, of which
 
 The John
 

 §
 

 is the one most frequently cited. But in that case there was no opposition by the owners, nor was the question much considered. Directly opposed to that case is the case of
 
 The Maitland,
 

 ||
 

 in
 
 *223
 
 which the admiralty court refused to follow it, remarking that there is no solid distinction between original suits and suits against the proceeds, where there is opposition'. ' Mere remnants, if
 
 unclaimed by the owner,
 
 may stand upon a different footing, and it is upon that ground that the admiralty courts, have sometimes decreed the payment of small
 
 unclaimed
 
 sums to a creditor of the owner having
 
 p
 
 clear equity, to prevent the same from being indefinitely impounded in the registry of .the court. Exactly the same point was decided, in the same way, in the case of
 
 The Neptune,
 

 *
 

 in which all of the authorities to that time were carefully examined. Where the ship is sold the proceeds are in the hands of the court, which holds the fund in trust, and the court in the following case added that the owner is in some sense entitled to the same, but finally décided that inasmuch as he cannot obtain the fund without the order of the court, that it cannot be attached under the garnishee process.
 
 †
 

 Supplemental suits in the nature of a suit
 
 in rem
 
 may unquestionably be entertained in favor of parties having
 
 an interest
 
 in the proceeds, as was held by this court in the case of
 
 Andrews
 
 v.
 
 Wall,
 

 ‡
 

 in which this court said that such suits may be entertained to ascértain to whom the proceeds belong and to deliver the same over to the parties who establish the lawful ownership to the property, as in the case of the sale of a ship to satisfy claims for seamen’s wages, or for a bottomry bond, or for salvage services, or to discharge a lien for repairs and supplies, the rule being that after thé original demand is paid if a surplus remains in the registry, the court may determine to whom the same belongs. Other lien claims are also mentioned for which the ship may be sold, but it is unnecessary to recapitulate them, as those enumerated are sufficient to explain the principle adopted by the court.
 
 §
 

 Different views have in some few instances been adopted
 
 *224
 
 by the District Courts, but the right of the court to decree that third persons who could not have proceeded against the property
 
 in rem
 
 may recover a proportion of the proceeds to satisfy their claims ■'against the owner, in a case where the owner appears and opposes the application, seems to be repugnant to every sound principle of judicial proceeding, and it is certainly opposed to the great weight of authority.
 
 *
 

 Reference is sometimes made to the case of
 
 Place
 
 v. Potts,
 
 †
 
 as supporting the opposite rule, but the court here is not able to regard the caseas having any such tendency, as the judgment in that case in the court of original jurisdiction was founded almost entirely upon.dhe decision of the admiralty judge-in the case of
 
 The
 
 Dowthorpe,
 
 ‡
 
 which is nothing but a simple apportionment of the different liens upon the ship and freight.
 

 Suppose that is so, still it is contended that the appellees ■ acquired the right of preference in the fund by virtue of the proceedings under the garnishee process, as more fully set forth in the record; but the court is entirely of a different opinion, for several reasons:
 

 1. Because the fund, froVn its very nature, is not subject to attachment either by the process of foreign-attachment or of garnishment, as it is held in trust by the court to be delivered to-whom it may belong, after hearing and adjudication by the court.
 
 §
 

 2. Because the proceeds in such a case are not by law in the hands of the clerk nor of the judge, nopis the fund-subject to the coutrol of the clerk. Moneys in the registry of the Federal courts are required by the act of Congress to be
 
 *225
 
 deposited with the Treasurer of the United States, or ari assistant treasurer or designated depositary, in the name or to the credit of such court, and the provision is that no money, deposited as afor'esaid shall be withdrawn except by the order of the judge or judges of said courts .respectively, in term time >or vacation, to be signed by such judge or judges and to be entered and certified of record by the clerk.
 
 *
 
 Regulations substantially to the same effect have existed i,n the acts of Congress for more than half a century, and within that period it is presumed'that no proceeding to attach such a fund by a creditor, of the owner has ever been sustained.
 
 †
 

 3. Judgments were never a lien upon personal property, unless made so- by attachment under mesne process, which is all that need be said in respect to the proposition that the appellees acquired a right of preference to the proceeds’ in the registry of the court by virtue of their judgment against the owners.
 

 Mention should also be made of another error, which . ought if possible to. be promptly corrected. Where an appeal is taken from the decree of the District Court in a proceeding
 
 in rem
 
 to the Circuit Court, the property or proceeds thereof follows the cause into the Circuit Court, where it remains until the litigation is ended, as it does not follow the cause into the Supreme Court.
 
 ‡
 
 Application was made to the District Court to send up the proceeds, and the record shows that the court overruled the same, which is.a plain error and one which ought to be promptly corrected, unless the proceeds have been paid over as directed by the court, and if so, they should be recalled, if practicable, and restored to the registry, and then sent up to, the Circuit Court, as the Circuit Court in such cases executes its own decree.
 

 Imperfectly tried, as the case has been, the court here is of the. opiniou aud directs that leave be given to both parties
 
 *226
 
 to amend their pleadings, and if need be to take further proof's.- Error was also committed by the Circuit Court in affirming the decree of the District Court, as it is plain it should have been reversed. For these reasons the decree of the Circuit Court is in all things reversed, and the cause remanded for further proceedings
 

 In conformity to this opinion.
 

 *
 

 2 Stat. at Large, 244.
 

 †
 

 1 Id. 84.
 

 ‡
 

 4 Wheaton, 443.
 

 *
 

 The Lulu, 10 Wallace, 192; The Belfast, 7 Id. 644; Leon
 
 v.
 
 Galceran, 11 Id. 191; Steamboat Co.
 
 v.
 
 Chase, 16 Id. 533; The St. Lawrence, 1 Black, 522.
 

 †
 

 The Moses Taylor, 4 Wallace, 430; The Hine
 
 v.
 
 Trevor, 4 Id. 571; The Belfast, 7 Id. 644; Steamboat Co.
 
 v.
 
 Chase, 16 Id. 534; Leon
 
 v.
 
 Galceran, 11 Id. 192.
 

 *
 

 Abbott on Shipping, 143, 148.
 

 †
 

 5 American Law Review, 612; 7 Id., The St. Lawrence, 1 Black, 529; The Harrison, 2 Abbott, United States Reports, 78; The Belfast, 7 Wallace, 645, 646.
 

 ‡
 

 The General Smith, 4 Wheaton, 443.
 

 *
 

 43 Admiralty Rule, Revised Code of Practice, Art. 3273-4; Revised Statutes of Louisiana, 604.
 

 *
 

 Brown
 
 v.
 
 Lull, 2 Sumner, 443; Sheppard v. Taylor, 5 Peters, 675; The Europa, Browning & Lushington, 87, 91; The Amelie, 2 Clifford, 448; Same Case, 6 Wallace, 30.
 

 *
 

 43 Admiralty Rule; Williams & Bruce’s Admiralty Jurisdiction, 229.
 

 †
 

 Conkling’s Practice (5th ed.), 570; Stratton
 
 v.
 
 Jarvis, 8 Peters, 4; The Killarney, Lushington, 430; Williams & Bruce’s Admiralty Jurisdiction, 199; The Julindur, 1 Spinks, 75; The Louisa, Browning & Lushington, 59; The Caledonia, Swabey, 17; The Mary Anne, 1 Ware, 108.
 

 ‡
 

 Nations
 
 v.
 
 Johnson et al., 24 Howard, 205; 43 Admiralty Rule.
 

 §
 

 3 Robinson, 290.
 

 ||
 

 2 Haggard’s Admiralty, 253.
 

 *
 

 3 Knapp's Privy Council, 111.
 

 †
 

 The Wild Ranger, Browning & Lushington, 88.
 

 ‡
 

 3 Howard, 573.
 

 §
 

 United States
 
 v.
 
 Casks of Wine, 1 Peters, 547; Schuchardt
 
 v.
 
 Ship Angelique, 19 Howard, 241.
 

 *
 

 2 Parsons on Shipping, 231; The New Eagle, 2 W. Robinson, 441; Gardner
 
 v.
 
 Ship New Jersey, 1 Peters’s Admiralty, 226; Clement
 
 v.
 
 Rhodes, 3 Addams, 40.
 

 †
 

 8 Exchequer, 705; Same Case, 10 Id. 370; Same Case, 5 House of Lords Cases, 383.
 

 ‡
 

 2 W. Robinson, 90.
 

 §
 

 The Albert Crosby, 1 Lushirigton, 101; The Wild Ranger, Browning & Lushington, 8; 1 Chitty’s Archbold’s Practice (11th. ed.), 702.
 

 *
 

 17
 
 Stat. at Large, 1.
 

 †
 

 3 Id. 395.
 

 ‡
 

 The Collector, 6 Wheaton, 194; The Seneca, Gilpin, 34; The Grotius, 1 Gallison, 503; Montgomery
 
 v.
 
 Anderson, 21 Howard, 388; Conklin’s Practice (5th ed.), 569.