# United States Court of Appeals
## For the First Circuit

No. 16-1010

LAW OFFICES OF DAVID EFRON, P.C.

Appellant,

v.

MADELEINE CANDELARIO,

Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. José A. Fusté, U.S. District Judge]

---

Before

Howard, Torruella, and Dyk,[*]
Circuit Judges.

---

Charles A. Cuprill-Hernández on brief for appellant.
Michelle Pirallo-Di Cristina on brief for appellee.

---

December 2, 2016

---

[*] Of the Federal Circuit, sitting by designation.

**DYK**, **Circuit Judge**. The Law Offices of David Efron, P.C. ("Efron Firm") appeals from an order of the United States District Court for the District of Puerto Rico directing that "the moneys for legal fees to Mr. Efron, which we ordered retained by our Clerk, be disbursed to the Court of First Instance, Superior Part of San Juan." ECF No. 55. We conclude that Puerto Rico courts cannot garnish funds deposited in a federal district court's registry, and that the district court cannot transfer registry funds without transferring the concomitant case. Because the appellee, Madeleine Candelario, has no right to intervene in the federal action, we reverse and direct that the funds be paid pursuant to the provisions originally governing the funds' disposition.

## I.

David Efron ("Efron") and Madeleine Candelario were involved in two proceedings before the Superior Court of Puerto Rico: a divorce proceeding that concluded in 2000, and a pending marital property division proceeding. David Efron is the sole owner of the Efron Firm. In the divorce proceeding, the Superior Court of Puerto Rico ordered payment of $5,473,627.98 plus interest from Efron to Candelario. Candelario alleges that Efron has refused to pay as ordered by the Superior Court, which has forced her to resort to garnishing funds owned by Efron.

- 2 -

The present controversy concerns funds allegedly owned by Efron[1] and deposited in the federal district court registry. In the case of Juan Carlos Torres Rivera v. Hospital Menonita Caguas, Inc., No. 15-1231 (D.P.R. Aug. 31, 2015), in the district court, the Efron Firm represented the plaintiffs and secured a settlement for its clients. In accordance with the settlement agreement, the defendants deposited the Efron Firm's attorney's fees with the district court clerk. Meanwhile, in the divorce proceeding in Puerto Rico Superior Court, the court issued an order garnishing amounts owed to Efron (not specific to these funds) to satisfy the Superior Court judgment.

On September 14, 2015, Candelario served the district court clerk with a certified translation of the Superior Court's garnishment order and requested that the district court transfer the amounts deposited in the district court registry pursuant to the Rivera settlement. On December 8, 2015, the district court ordered that "the moneys for legal fees to Mr. Efron, which we ordered retained by our Clerk, be disbursed to the Court of First Instance, Superior Part of San Juan, . . . for that court to decide to who, when, and how to disburse those moneys

---

[1] The parties dispute whether Efron, the individual, can be treated as owning funds belonging to the Efron Firm. For the purposes of this opinion, we treat the funds in the district court registry as belonging to Efron, the individual, without deciding the question of their ownership.

- 3 -

[because the] Superior Court is in the best position to consider all the equities, rights, and obligations arising from its judgment and orders for execution of judgment." ECF No. 55. Efron appealed. The district court order is a final order, see Alstom Caribe, Inc. v. Geo. P. Reintjes Co., 484 F.3d 106, 113 (1st Cir. 2007), over which we have jurisdiction under 28 U.S.C. § 1291. We stayed the district court transfer order pending appeal.

**II.**

The first issue is whether the Superior Court of Puerto Rico could garnish funds deposited in the registry of the federal district court. Supreme Court authority establishes that it cannot: funds in federal court registries are protected under the doctrine of custodia legis from garnishment or attachment by a state court.

In The Lottawanna, 87 U.S. (20 Wall.) 201 (1873), owners of a steamship were sued in a federal district court sitting in admiralty for failure to pay wages. The owners sold the steamship in order to pay the claims, and deposited the sale proceeds in the federal court registry for disbursement to the wage claimants. Id. at 211. After the deposit occurred, additional parties attempted to garnish the funds based on state court judgments relating to expenses incurred by the ship

- 4 -

owners. Id. at 214. The district court ordered the funds in the registry to be paid over to these state court judgment claimants. Id. at 215-16. On appeal, the Supreme Court held that the federal court registry "fund, from its very nature, is not subject to attachment either by the process of foreign attachment or of garnishment, as it is held in trust by the court to be delivered to whom it may belong." Id. at 224. The Court thus ordered the return of the incorrectly disbursed funds from the state court judgment claimants. Id. at 225-26. This doctrine of custodia legis is "based on the desirability of avoiding a clash between judicial jurisdictions which would result from any attempt to use the process of one to seize assets in the control of another judicial authority . . . [especially] where the judicial departments belong to different sovereignties." In re Quakertown Shopping Ctr., Inc., 366 F.2d 95, 97 (3d Cir. 1966).

The custodia legis principle has been reaffirmed in subsequent cases. In Osborn v. United States, 91 U.S. 474 (1875), the Supreme Court held that the "power of the [district] court over moneys belonging to its registry continues until they are distributed pursuant to final decrees in the cases in which the moneys are paid." Id. at 479 (emphasis added). And Motlow v. Missouri ex rel. Koeln, 295 U.S. 97 (1935), noted that a state

would be "without jurisdiction to enforce [its] liens . . . [if] the property was in custodia legis . . . [because of] interference with the custody of the federal court." Id. at 99-100.

While this circuit has not had occasion to address the question of whether state courts can garnish funds deposited in a federal court registry, other circuits have followed Lottawanna to reach the same result. In Bucher v. Vance, 36 F.2d 774 (7th Cir. 1929), the Seventh Circuit, citing Lottawanna, held that the "fund, in the registry of the District Court, and under its control, could not be subjected to seizure on behalf of" a state court judgment. Id. at 776. In White v. FDIC, 19 F.3d 249 (5th Cir. 1994), the Fifth Circuit, also citing Lottawanna, held that

> [a]ny attempt to attach funds deposited in the registry of a federal district court is subject to the doctrine of custodia legis. Under the doctrine of custodia legis, funds deposited in the registries of federal courts may not be attached except by order of the judge or judges of said courts.

Id. at 253 n.12 (internal citations and quotation marks omitted). In Garrick v. Weaver, 888 F.2d 687 (10th Cir. 1989), the Tenth Circuit, quoting Lottawanna, held that because "fund[s] in registry [are] not subject to attachment either by foreign attachment or garnishment and no money deposited . . . shall be withdrawn except by the order of the judge[, the

- 6 -

appellant] must obtain court approval before she can access the funds in the court registry." Id. at 695 (internal quotation marks omitted). In Landau v. Vallen, 895 F.2d 888 (2d Cir. 1990), the Second Circuit cited Lottawanna to explain that custodia legis serves to bar garnishment that would "prevent the court from disposing of the funds in accordance with the purpose for which they were deposited." Id. at 893-94. And in United States v. Van Cauwenberghe, 934 F.2d 1048 (9th Cir. 1991), the Ninth Circuit cited Lottawanna for the proposition that "[i]t has long been asserted that property and funds in the registries of federal courts are not, as a general rule, subject to writs of attachment or garnishment." Id. at 1062. Like the other circuits, we agree that Lottawanna prevents a state court, such as the Puerto Rico Superior Court, from garnishing funds in a federal court registry.

**III.**

We next turn to the issue of whether the federal district court had authority to transfer the funds to the Superior Court. Case law from this circuit bans such transfers unless accompanied by the concomitant transfer of the case.

In Alstom Caribe, Inc. v. Geo. P. Reintjes Co., 484 F.3d 106, 110 (1st Cir. 2007), Alstom Inc. sued Reintjes Co. and St. Paul Co. in the District of Puerto Rico for breach of

contract. The parties settled, and Reintjes and St. Paul disputed whether Reintjes owed monies to St. Paul in connection with the settlement expenses. Thereafter, St. Paul sued Reintjes in the Western District of Missouri to recover these amounts. Meanwhile, in the Puerto Rico district court, Reintjes had asserted counterclaims against Alstom. These were also settled, and Alstom deposited the funds to be paid to Reintjes with the Puerto Rico district court registry pursuant to the settlement. Id. at 110-11. The district court of Puerto Rico transferred these settlement funds deposited in its registry to the Western District of Missouri for it to "determine what to do with the funds." Id. at 115.

On appeal, the Alstom court noted that "[t]he most glaring defect in the order is the transmittal of the deposited funds to the Western District of Missouri without a concomitant transfer of any case or cause of action." Id. at 114. "[T]here is no statute, rule, or legal precedent that authorizes a court to effect a non-consensual transfer of [court-deposited] funds to a different court without a concomitant transfer of the entire case (or, at least, some cause of action). Because the monetary transfer here was unaccompanied by a shifting of either the case or a cause of action within it, that transfer was legally insupportable." Id. at 115. Here too, the district court

improperly ordered precisely such a "naked transfer" of the Efron Firm's funds in its registry without the accompanying transfer of any of the claims. See id. at 114.

**IV.**

We finally consider the question of further proceedings. The Alstom court ultimately remanded the case and "direct[ed] the Puerto Rico district court to consider . . . the question[] of intervention." Id. at 116. No such remand is appropriate here because Candelario never sought to intervene and has no right to intervene.

Rule 24(b)(1) provides that "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Whether federal courts have ancillary jurisdiction over intervenor claims "will depend on whether the claim of the would-be intervenor is so related to the original action that it may properly be regarded as ancillary to it." 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1917, at 586 (3d ed. 2007) (emphasis added). This circuit has found that ancillary jurisdiction exists only when the issues "are so inextricably entangled with one another that full justice cannot be done in [the] original suit without

- 9 -

adjudication of the matters raised" in the ancillary claim. Walmac Co. v. Isaacs, 220 F.2d 108, 114 (1st Cir. 1955).

Here, Candelario concedes that she has no right to intervene to assert a right to the funds in the federal registry. She states that she "could not seek intervention as of right because she had no interest in the underlying case, and [could not seek] . . . permissive intervention . . . because the underlying case was over." Appellee Br. At 8-9. But even if she had made a request to intervene, it is clear that Candelario's claim does not share with the underlying Rivera litigation any "common question of law or fact." Moreover, all of the questions of law or fact in the Rivera litigation have already been settled. Candelario's claim is a post-judgment claim unrelated to the original dispute. There is no right to intervene.

## V.

We conclude that the Superior Court of Puerto Rico cannot garnish funds deposited in the registry of a federal district court, that the district court cannot transfer registry funds without transferring the concomitant case, and that Candelario has no right to intervene to assert a claim to the funds. We **reverse and remand** with directions to pay the deposited funds pursuant to the provisions originally governing the funds' disposition.

**REVERSED AND REMANDED**. Costs to appellant.